## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

-----------------------------------------------------------------------x

In re:

NEW CENTURY TRS HOLDINGS, INC.,
f/k/a NEW CENTURY FINANCIAL CORPORATION,
a Delaware Corporation, *et al.*,[1]

Debtors.

-----------------------------------------------------------------------x

RICHARD D. AUSTIN, LAUREN V. LIVA, MICHAEL
VANDALL, SCOTT RASMUSSEN, MARTHA F.
MORELAND and CARLA LYLES,
on their own behalf and on behalf of all other persons
similarly situated,

Plaintiffs,

v.

NEW CENTURY TRS HOLDINGS, INC., NEW
CENTURY FINANCIAL CORPORATION, NEW
CENTURY MORTGAGE CORPORATION, and
HOME123 CORPORATION,

Defendants.

-----------------------------------------------------------------------x

Case No. 07-10416-KJC

Chapter 11

Jointly administered

Adv. Pro. No. 07-50970-KJC

## JOINT MOTION PURSUANT TO SECTION 105 OF THE BANKRUPTCY
## CODE AND BANKRUPTCY RULES 7023 AND 9019(a) TO (I) PRELIMINARILY
## APPROVE SETTLEMENT BETWEEN THE DEBTORS, THE COMMITTEE AND THE
## WARN CLASS PLAINTIFFS, (II) APPROVE THE FORM AND MANNER OF NOTICE
## TO CLASS MEMBERS OF THE SETTLEMENT, (III) SCHEDULE A FAIRNESS

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporation, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P., (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership; and New Century Warehouse Corporation, a California corporation.

## HEARING TO CONSIDER FINAL APPROVAL OF THE SETTLEMENT, (IV) ISSUE A SECOND ORDER SUBSEQUENT TO THE FAIRNESS HEARING, FINALLY APPROVING THE SETTLEMENT, AND (V) GRANT RELATED RELIEF

The New Century Liquidating Trust (the *"Liquidating Trust"*), by and through

Alan M. Jacobs, as its Bankruptcy Court-appointed Liquidating Trustee, and class

representatives Richard D. Austin (*"Austin"*), Lauren V. Liva (*"Liva"*), Michael Vandall

(*"Vandall"*), Scott Rasmussen (*"Rasmussen"*), Martha F. Moreland (*"Moreland"*), Carla Lyles

(*"Lyles"*), Travis Kelley (*"Kelley"*) and James Holzgang (*"Holzgang"*) (each a *"Class

Representative"* and collectively, the *"Class Representatives"*), on behalf of themselves and

similarly situated class members (the *"Class Members"*) (the Class Representatives and the

Liquidating Trust collectively, the *"Movants"*), by and through their respective counsel, hereby

move this Court, pursuant to section 105 of title 11 of the United States Code (the *"Bankruptcy

Code"*), Rule 7023 (incorporating Rule 23 of the Federal Rules of Civil Procedure (the *"Civil

Procedure Rules"*)) and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the

*"Bankruptcy Rules"*) for the entry of (a) an initial order (i) preliminarily approving a settlement

(the *"Settlement"*)[2] among debtors New Century TRS Holdings, Inc., New Century Financial

Corporation, New Century Mortgage Corporation and Home123 Corporation (collectively the

*"Debtor-Defendants"*), the Class Members and the Official Committee of Unsecured Creditors

(the *"Committee"*) of the above-captioned debtors and debtors-in-possession (the *"Debtors"*) (the

Class Representatives, Debtors and the Committee collectively, the *"Parties"*), (ii) approving the

form and manner of notice to Class Members of the Settlement, and (iii) scheduling a fairness

hearing (the *"Fairness Hearing"*) to consider final approval of the Settlement, and (b) a second

order, issued subsequent to the Fairness Hearing, finally approving the Settlement (the

---

[2] The Settlement is memorialized in a *Settlement and Release Agreement*, dated August 1, 2008 (the *"Settlement Agreement"*), a copy of which is attached hereto as *Exhibit 1*.

877285.010-1479457.5
127340.01600/40176235v.1

"*Motion*"), and in support thereof respectfully represent as follows:

## General Background

1. On April 2, 2007 (the "*Petition Date*"), New Century Financial Corporation and its direct and indirect subsidiaries filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "*Bankruptcy Court*").

2. On August 3, 2007, New Century Warehouse Corporation filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court.

3. The Debtors' bankruptcy cases currently pending in the Bankruptcy Court (the "*Bankruptcy Cases*") are being jointly administered as *In re New Century TRS Holdings, Inc., et al.*, Case No. 07-10416 (KJC).

4. On or about April 9, 2007, the Committee was appointed.

5. On or about April 23, 2008, the Debtors filed the *Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors* (the "*Plan*").

6. On July 2, 2008, the Bankruptcy Court entered an order confirming the Plan, which Plan became effective on August 1, 2008 (the "*Effective Date*"). Pursuant to the terms of the Plan, on the Effective Date the New Century Liquidating Trust Agreement was executed, thereby creating the Liquidating Trust and appointing Alan M. Jacobs as Liquidating Trustee (the "*Trustee*").

## Initiation of the WARN Litigation

7. On the Petition Date, the Debtor-Defendants terminated approximately 2,857 of 6,725 employees in their various business operations (the "*April RIF*"), including

3

approximately 1,185 Class Members. Class Representatives Austin, Liva, Vandall, Rasmussen, Moreland and Lyles were terminated during the April RIF.

8.       Also on the Petition Date, the Debtor-Defendants contend that they delivered or mailed a letter (the *"Protective WARN Notice"*) to certain employees subject to the April RIF that constituted adequate notice under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 *et seq.*, and/or its California counterpart, California Labor Code §§ 1400 *et seq.* (collectively, the *"WARN Act"*), of any plant closing or mass layoff affecting such persons to the extent that the WARN Act was applicable.

9.       Pursuant to an order entered by the Bankruptcy Court on April 3, 2007, the Debtors were authorized to make payments to certain of the Debtors' employees for wages and benefits that accrued prior to the Petition Date.

10.       On April 17, 2007, certain Class Representatives filed with the Bankruptcy Court a class-action complaint (the *"Complaint"*), commencing an adversary proceeding (the *"WARN Action"*) against the Debtor-Defendants, alleging that the Debtor-Defendants violated the WARN Act by ordering plant closings and/or mass layoffs on or about April 2, 2007 and thereafter, without providing sixty (60) days of advance notice thereof. Those Class Representatives further asserted that as a consequence of this alleged failure, the affected employees have an administrative priority claim pursuant to 11 U.S.C. § 503(b)(1)(A) against the Debtor-Defendants for damages for the sixty (60) day violation period. The WARN Action is titled *Richard D. Austin, Lauren V. Liva, Michael Vandall, Scott Rasmussen, and Martha F. Moreland, on their own behalf and on behalf of all other persons similarly situated, v. New Century TRS Holdings, Inc., New Century Financial Corporation, New Century Mortgage Corporation, and Home123 Corporation*, and is presently pending in the Bankruptcy Court as

4

Adversary Proceeding No. 07-50970 (KJC).

11.     On April 18, 2007, certain Class Representatives filed a First Amended Complaint (the "*FAC*") containing substantially similar allegations.

12.     During the period from May 4, 2007 through June 3, 2007, the Debtor-Defendants terminated approximately 1,879 of the 3,868 remaining employees (the "*May RIF*"), including approximately 349 Class Members. Class Representatives Kelley and Holzgang were terminated during the May RIF.

13.     The Debtor-Defendants contend that on or prior to May 4, 2007, and thirty (30) days following immediately thereafter, they delivered or mailed a Protective WARN Notice to certain employees subject to the May RIF that the Debtor-Defendants assert constituted adequate notice under the WARN Act of any plant closing or mass layoff affecting such persons to the extent that the WARN Act was applicable.

14.     On or about April 18, 2007 through August 31, 2007, certain Class Members filed proofs of claim against the Debtor-Defendants in the Bankruptcy Cases for amounts allegedly owed under the WARN Act ("*Individual Proofs of Claim*"), but no proof of claim was filed collectively on behalf of the Class Members.

15.     On or about June 8, 2007, the Debtor-Defendants filed their answer and affirmative defenses (the "*Answer*") to the FAC. The Answer denied certain material allegations of the FAC and asserted, among their affirmative defenses, (i) the FAC was barred by the liquidating fiduciary doctrine; (ii) the FAC was barred by the faltering company defense as enumerated in 29 U.S.C. § 2102(b)(1); (iii) the FAC was barred by the unforeseen business circumstances defense as enumerated in 29 U.S.C. § 2102(b)(2)(A); (iv) the Debtor-Defendants were acting in good faith and had reasonable grounds for believing the timing of any individual's

5

termination was lawful; (v) the Debtor-Defendants reasonably and in good faith believed that no prior WARN Act notice was required and that such notice provided, solely out of an abundance of caution, was fully adequate; and (vi) the Debtor-Defendants made a number of voluntary payments to the Class Members that should offset any alleged damage suffered by the Class Members.

### Class Certification, Approval of Class Notice and Appointment of Class Counsel

16. On or about August 15, 2007, certain Class Representatives filed a motion for class certification and other relief.

17. Subsequent to an agreement between the Debtor-Defendants and the Class Representatives, the Bankruptcy Court granted class certification (the *"Class Certification Order"*)[3] on September 11, 2007. The Class Certification Order, entered on September 12, 2007, provided:

   a. The certification of a class (the *"Class"*) comprised of the following two subclasses:

      i. All former employees of Debtor-Defendants who were terminated without cause from their employment at Debtor-Defendants' facilities (the *"Facilities"*) during the period April 2, 2007 to May 1, 2007, as part of, or as the reasonably expected consequence of, a mass layoff or plant closing, as defined by the WARN Act, at the Facilities, who have not validly released their WARN Act claims and who do not file a timely request to opt-out of the class (*"Subclass One"*); and

      ii. All former employees of Debtor-Defendants who were terminated without cause from their employment at the Facilities during the period May 2, 2007 or thereafter, as part of, or as the reasonably expected consequence of, a mass layoff or plant closing, as defined by the WARN Act, at the Facilities who have not validly released their WARN

---

[3] A *Revised Order Granting Class Certification* was entered on October 19, 2007.

877285.010-1479457.5
127340.01600/40176235v.1

Act claims and who do not file a timely request to opt-out of the class ("*Subclass Two*").[4]

b.   Plaintiffs Austin, Liva, Vandall, Rasmussen, Moreland, and Lyles were appointed class representatives of Subclass One. Within 30 days of entry of the Order, Plaintiffs were to propose class representative(s) for Subclass Two.

c.   Margolis Edelstein, The Gardner Firm, P.C. and Lankenau & Miller, LLP were appointed class counsel (collectively, "*Class Counsel*").

The Class Certification Order also ordered that notice be mailed by Class Counsel to each Class Member informing them of, among other things, the litigation and their right to opt-out of their designated subclass (the "*Initial Class Notice*").

### The Initial Class Notice

18.   On or about October 12, 2007, the Debtor-Defendants had provided an initial list of Class Members (the "*Initial Class Member List*") to Class Counsel. The Initial Class Member List was based on the best information available to the Debtor-Defendants at the time and transmitted in good faith.

19.   On or about October 30, 2007, Class Counsel completed mailing of the Initial Class Notice to Class Members listed on the Initial Class Member List.

20.   In response to the Initial Class Notice, five (5) individuals timely opted out of their sub-class.

21.   In a continuing effort to verify the accuracy of the Class Member information being provided to Class Counsel, the Debtor-Defendants subsequently discovered that the Initial Class Member List inadvertently omitted certain persons within the definition of

---

[4] On October 23, 2007, Class Counsel designated Kelly and Holzgang as representatives for Subclass Two. As there was no objection from Debtor-Defendants' Counsel, the former employees joined the representatives of Subclass One to become Class Representatives, collectively.

the Class and included persons falling outside of the Class. The Debtor-Defendants disclosed this information to Class Counsel and provided a supplemental list of Class Members (the "*Supplemental Class List*") in January 2008. As a consequence, certain Class Members did not receive the Initial Class Notice and have never been afforded an opportunity to opt-out of the WARN Action (the "*New Class Members*"). Class Counsel and counsel for the Debtor-Defendants ("*Debtor-Defendants' Counsel*") continued to negotiate the precise classification of employees subject to either the April RIF or May RIF.

22.     The 1,529 persons listed on *Exhibit 3* to the Settlement Agreement constitute, to the best of the Debtor-Defendants' knowledge, information and belief, all the individuals are currently within the definition of the Class (the "*Final Class Member List*"). Further, 86 employees ineligible for either sub-class were inadvertently listed on the Initial Class Member List (the "*Ineligible Class Members*"). Attached to Settlement Agreement as *Exhibit 4* is a list of the names and addresses of the Ineligible Class Members and the reason why each person is classified as ineligible (the "*Ineligible Class Member List*").

## The Stipulated Intervention of the Committee

23.     On or about February 5, 2008, the Bankruptcy Court entered an Order approving a joint stipulation and agreement permitting the Committee to intervene in the WARN Action.

## The Settlement Negotiations

24.     On January 22, 2008, the Parties executed a *Pre-Negotiation Agreement* under the express intent of engaging in discussions and negotiations regarding the possible settlement of the WARN Action and all related claims.

25.     On February 14, 2008, the Parties exchanged certain materials and

8

engaged in series of discussions and negotiations pursuant to the *Pre-Negotiation Agreement*.

26.    On February 22, 2008, the Parties executed the *Second Amended Scheduling Order (By Consent)* establishing a mutual discovery moratorium up to and including March 24, 2008, while the Parties actively engaged in settlement negotiations.

## Proposed Settlement of Claims

27.    In late March, 2008 the Parties reached a tentative agreement, the terms of which were later memorialized in the Settlement Agreement. In general, the Settlement Agreement provides for the payment of damages in the amount of $2.6 million in settlement of the Plaintiffs' claims that the Debtor-Defendants allegedly failed to provide adequate notice under the WARN Act. The Settlement provides for a single payment by the Liquidating Trust (as successor to the Debtor-Defendants) to be distributed as follows:[5]

- Creation of a Settlement Fund:  A settlement fund of $2.6 million in the aggregate (the *"Settlement Fund"*) shall be paid to Class Counsel by the Liquidating Trust within five (5) business days after the Final Approval Date in full and final satisfaction of the Released Claims[6] of Eligible Class

---

[5] As the foregoing is a summary, the terms of the Settlement Agreement shall control.

[6] Released Claims are defined as

the claims of each Eligible Class Member, for any alleged failure to provide adequate notice under the WARN Act and any claims arising out of the termination of their employment with the Debtor-Defendants, whether based on the WARN Act or any other federal, state or local law, regulation or ordinance. Not included in Released Claims are (i) any obligation created by or arising out of this Settlement; (ii) any right to indemnification that the Eligible Class Members may have pursuant to any articles of incorporation, certificate of incorporation, bylaws or similar governing document of any Debtor-Defendant with respect to any loss, damages or expenses (including but not limited to attorney's fees) that an Eligible Class Member may in the future may incur with respect to his or her prior service as an employee, officer or director or in any other capacity with any Debtor-Defendant; (iii) any rights that an Eligible Class Member may have to insurance coverage for such losses, damages or expenses under any directors and officers liability insurance policy of any Debtor-Defendant; (iv) an Eligible Class Member's rights to continued medical coverage under COBRA; (v) any rights to payment of benefits that an Eligible Class Member may have under a qualified or nonqualified retirement plan sponsored or maintained by any Debtor-Defendant (including, without limitation, any 401(k), deferred compensation, and supplemental retirement

9

Members.

- Class Counsel shall determine the amount of all distributions under the Settlement and shall have the option to engage a third-party acceptable to the Movants to issue all notices to the Class Members, disbursement checks and 1099 Forms. The Liquidating Trust shall contribute $10,000, in addition to and separate from the Settlement Fund, for the purpose of covering a portion of these administrative costs.

- The amount of the gross allowed claim allocated to each Accepting Eligible Class Member shall be derived from $2.584 million (i.e., the Settlement Fund of $2.6 million, less $16,000 paid in the aggregate as service fees to the Class Representatives) and shall be based on the following:

  - approximately 70% of each Eligible Class Member's Maximum Theoretical WARN Claim (defined herein below) where the Eligible Class Member was subject to the April RIF and formerly employed in California;

  - approximately 35% of each Eligible Class Member's Maximum Theoretical WARN Claim where the Eligible Class Member was subject to the April RIF and formerly employed outside California;

  - approximately 15% of each Eligible Class Member's Maximum Theoretical WARN Claim where the Eligible Class Member was subject to the May RIF and formerly employed in California; and

  - approximately 10% of each Eligible Class Member's Maximum Theoretical WARN Claim where the Eligible Class Member was subject to the May RIF and formerly employed outside California.

    - In calculating the amount of the gross allowed claims described above, the daily rate of individual Eligible Class Members shall be determined by dividing the employee's bi-weekly base salary at the time of termination of employment by 10 (the "*Daily Pay*").[7] Class Counsel shall then determine each Eligible Class Member's maximum theoretical WARN claim by multiplying each Eligible Class Member's

---

benefits); and (vi) an Eligible Class Member's right to benefits or coverage
under any employee welfare benefit plan (as that term is defined in Section 3(1)
of the Employee Retirement Income Security Act of 1974, as amended).

Settlement Agreement, ¶ 5(f).

[7] Bi-weekly payroll information at the time of termination was not available for five Eligible Class
Members. Their daily rate shall be determined by taking their 2007 income from Debtor-Defendants and dividing it
by the number of work days within the period of January 1, 2007 through their date of termination.

877285.010-1479457.5
127340.01600/40176235v.1

Daily Pay by 22 (the *"Maximum Theoretical WARN Claim"*). This calculation is based on the following assumptions: 1) that there were 45 working days with the alleged 60 day violation period and 2) that the 45 working days should be reduced by approximately 50% (to 22 days) to account for wage offsets paid by Defendants to employees. The Maximum Theoretical WARN Claim shall then be multiplied by the percentages set forth above and deemed appropriate given the Eligible Class Member's RIF date, the state in which he or she was formerly employed and applicable law.

- The gross allowed claim of each Eligible Class Member shall be subject to Class Counsel's attorneys' fees in the amount of 33 1/3% as set forth in the Settlement Agreement. Such attorneys' fees shall be deducted prior to payment of Eligible Class Members.

- <u>Payment to Class Representatives:</u> The Class Representatives shall each receive a one-time payment of two thousand dollars ($2,000) for their service on behalf of the Class Members. Such payments will be made in addition to their individualized settlement amounts.

- <u>Issuance of Class Notice:</u> Class Counsel shall send by first class mail to each Class Member's last known address an individualized notice (the *"Additional Class Notice"*) indicating:

  - that if a Class Member is classified as an Ineligible Class Member, the reason such Class Member is now believed not to come within the definition of the Class and affording an opportunity to dispute such classification;

  - that each Eligible Class Member has the right to opt out of the Class (if they have not already been provided that right) and preserve all of his/her rights against the Debtor-Defendants, if any, including the Released Claims (all such opting out Eligible Class Member, the *"Additional Opt-Outs"*);

  - the date such Eligible Class Member was terminated, the office location to which the Eligible Class Member was assigned as of the date of his/her termination, and the Eligible Class Member's bi-weekly base salary on the date of termination;

  - that the Settlement shall be effective as to all Eligible Class Members that do not opt-out of the Class; however, if the Bankruptcy Court does not approve the Settlement or if more than 5% of the Eligible Class Members timely opt-out of the Settlement, then the Settlement shall not become effective;

11

- the dollar amount such Eligible Class Member would receive under the Settlement, before attorney's fees and if the Settlement becomes effective, as well as an estimate of such net payment after such amounts are deducted; and

- that such Class Member has the right to object to the Settlement, to retain counsel and be heard at the Fairness Hearing.

- Release of Defendants/Class Representatives: Upon the Final Approval Date, each Eligible Class Member, other than the Initial Opt-Outs or Additional Opt-Outs (the "*Releasing Parties*"), shall be deemed to have settled, released and completely extinguished any and all Released Claims that the Releasing Parties may have against the Debtor-Defendants or the Liquidating Trust. In addition, the Releasing Parties shall be deemed to have released each of the Class Representatives from any and all claims that he/she may have against the Class Representatives arising out of any Released Claim or the terms of the Settlement.

28. The Liquidating Trust believes that the terms of the Settlement are well within the range of reasonableness and are in the best interests of the Debtors' estates and its creditors and should be approved.

29. The Class Representatives and Class Counsel believe that the Settlement is fair, reasonable and adequate to the Class.

## Jurisdiction

30. This Court has jurisdiction over the Motion under 28 U.S.C § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are section 105 of the Bankruptcy Code and Bankruptcy Rules 7023 and 9019.

## Request for Relief

31. The Movants request that this Court enter (a) an initial order (i) preliminarily approving the Settlement, (ii) approving the form and manner of the Additional

12

Class Notice (the proposed form of which is attached to the Settlement Agreement as *Exhibit 6*),
and (iii) scheduling a Fairness Hearing to consider final approval of the Settlement, and (b) a
second order, subsequent to the Fairness Hearing, finally approving the Settlement.

**Argument**

## I.     THE ADDITIONAL CLASS NOTICE IN THE FORM ATTACHED TO THE SETTLEMENT SHOULD BE GIVEN TO EACH CLASS MEMBER BY FIRST CLASS MAIL

### A.     The Additional Class Notice Should Be Given To The Entire Class

32.     Civil Procedure Rule 23 requires that any class member to be bound by a
settlement must receive notice of the proposed disposition of the action. *See* FED. R. CIV. P.
23(e)(1).

33.     The Additional Class Notice informs each Class Member and Ineligible
Class Member of the definition of the Class and the nature of the WARN Action, the nature of
the claims being asserted, the issues in the action and defenses to the claims, the general terms of
the Settlement, the right to object to the Settlement, including the accuracy of the information
contained in the Additional Class Notice, the right to opt-out of the Class for those Class
Members not previously afforded the opportunity to do so, the right to appear by counsel, and
that additional information regarding the Settlement, including that a complete copy of the
Settlement Agreement, is available upon request from Class Counsel.

34.     Further, the Additional Class Notice informs each Class Member of the
information contained in the Debtors' books and records used to calculate the amount of that
Class Member's Maximum Theoretical WARN Claim and his/her projected gross allowed claim
and net Settlement payment after deduction of attorneys' fees including:

- whether such Class Member was deemed to be an Ineligible Class Member by reason
of a (a) his/her employment with the Debtor-Defendants being terminated for cause;

(b) his/her voluntary resignation from employment with the Debtor-Defendants; (c) his/her execution of a release of claims against the Debtor-Defendants; (d) his/her employment at a location other than a qualifying WARN Facility; or (e) his/her employment with a New Century entity that is not a Debtor-Defendant;

- the bi-weekly base salary of such Class Member at the time of his/her termination;

- the location where such Class Member was employed at the time of his/her termination; and

- the date such Class Member was terminated.

All Class Members should be informed of the basis on which their proposed Settlement payment was calculated, or their ineligibility to participate in the Settlement, and be afforded the opportunity to challenge and correct that information. For all these reasons, the Additional Class Notice should be sent to all Class Members and Ineligible Class Members.

B.   **The Form of Notice Complies with FED. R. CIV. P. 23 (c)(2)(B)**

35.   Civil Procedure Rule 23 requires that potential class members must be given notice of their proposed membership in a class, be provided with information regarding the class claim, and be afforded the opportunity to appear by counsel, and to opt-out of the class. The notice must clearly and concisely state:

- the nature of the action,
- the definition of the class certified,
- the class claims, issues or defenses,
- that a class member may enter an appearance through counsel if the member so desires,
- that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and
- the binding effect of a class judgment on class members under Rule 23(c)(3).

FED. R. CIV. P. 23(c)(2)(B).

36.   The Additional Class Notice includes all the information required by Rule 23(c)(2)(B), *i.e.*, it (i) describes the nature of the action; (ii) contains the definition of the Class; (iii) details the Class claims, the issues and the defenses; (iv) informs each Class Member of their

14

right to object and enter an appearance through counsel; (v) informs the New Class Members of their right to be excluded from the Settlement; and (vi) informs the New Class Members that if they do not opt-out, they will be bound by the Settlement.

37.     As detailed above in the paragraphs above, the Additional Class Notice goes well beyond the requirements of Civil Procedure Rule 23 by also informing each Class Member whether he or she is ineligible to receive the benefits of the Settlement and, if ineligible, the reason for that classification, the proposed Settlement payment that he/she will receive, the information used in calculating the amount of the gross allowed claim and the amount of the attorney's fees and expenses that will be deducted from gross allowed claim. Accordingly, the Additional Class Notice satisfies the requirements of Civil Procedure Rule 23.

## C.     Notice by First Class Mail to Each Class Member's Last Known Address is the Best Practicable Notice

38.     Civil Procedure Rule 23 requires that individual notice be provided to all class members who can be identified through a reasonable effort. *See* FED. R. CIV. P. 23(c)(2)(B). Many courts have found individual mailings to an individual's last known address to be appropriate. *See, e.g., White v. Nat'l Football League*, 41 F.3d 402, 408 (8th Cir.1994); *Weinbarger v. Kendrick*, 698 F.2d 61, 71 (2d Cir. 1983); *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 225 (D.N.J. 2005); *In re A-P-A Transport Corp. Consol. Litig.*, No. Civ. 02-3480, 2005 WL 3077916, at * 7 (D.N.J. Nov. 16, 2005); *Steiner v. Equimark Corp.*, 96 F.R.D. 603, 614 (W.D. Pa. 1983); *Trist v. First Fed. Sav. & Loan Ass'n*, 89 F.R.D. 1, 2 (E.D. Pa. 1980).

39.     The Movants propose to mail the Additional Class Notice to the last known address of each Class Member contained in the Debtors' records and, in the case of any returned envelopes, to such corrected addresses as Class Counsel may be able to obtain from a Class-wide mailing and/or from a national database to which Class Counsel subscribes or as the

15

Movants may otherwise obtain. Class Counsel represents that they have been able to obtain corrected addresses from the national database in most instances. In those few instances where they have not obtained corrected address from the national database, a Class-wide mailing asking Class Members for the current addresses of those individuals not located through the national database has yielded additional corrected addresses. In *In re A-P-A Transport Corp.*, 2005 WL 3077916, at *8, the District Court for the District of New Jersey held that these measures satisfy the requirements of Civil Procedure Rule 23(c)(2)(B). This Court should reach the same conclusion in the instant matter.

## II. THIS COURT SHOULD APPROVE THE AGREEMENT AS A COMPROMISE OR SETTLEMENT OF CONTROVERSY UNDER BANKRUPTCY RULE 9019

40.     The Third Circuit has emphasized that "to minimize litigation and expedite the administration of a bankruptcy estate 'compromises are favored in bankruptcy.'" *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 COLLIER ON BANKRUPTCY ¶ 9019.03[1] (15th ed. 1993)); *see also In re Culmtech, Ltd.*, 118 B.R. 237, 238 (Bankr. M.D. Pa. 1990) ("[C]ompromises are favored in bankruptcy and ... much of litigation in bankruptcy estates results in settlements"). Bankruptcy Rule 9019 authorizes a bankruptcy court to approve a compromise or settlement after notice and a hearing, FED. R. BANKR. P. 9019(a), and section 105 of the Bankruptcy Code empowers a court to issue any order that is "necessary or appropriate". 11 U.S.C. § 105(a).

41.     As this Court has noted, "the authority to approve a compromise settlement is within the sound discretion of the bankruptcy court." *In re Key3Media Group, Inc.*, Case No. 03-10323, 2005 Bankr. LEXIS 2606, at *9 (Bankr. D. Del. October 7, 2005); *see also In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997). When exercising such discretion, the

16

bankruptcy court must determine whether the compromise is "fair, reasonable, and in the best interests [sic] of the estate." *In re Key3Media Group*, 2005 Bankr. LEXIS 2606, at \*9; *see also In re RFE Industries, Inc.*, 283 F.3d 159, 165 (3d Cir. 2002); *In re Louise's, Inc.*, 211 B.R. at 801; *In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 249 (Bankr D. Del. 1998).

42.     "When determining whether a compromise is in the best interests of the estate, the Court must 'assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal.'" *In re Key3Media Group*, 2005 Bankr. LEXIS 2606, at \*10-11 (quoting *In re Martin*, 91 F.3d at 393 (citing *TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968))); *see also In re Nationwide Sports Distributors, Inc.*, 227 B.R. 455, 460 (Bankr. E.D. Pa. 1998) ("[I]n deciding whether to approve a particular compromise, courts utilize various criteria designed to achieve the objective of having the Trustee or debtor in possession act in [the] best interests of the estate"). To properly balance these values, the Court should consider all factors "relevant to a full and fair assessment of the wisdom of the proposed compromise." *In re Marvel*, 222 B.R. at 249 (quoting *TMT Trailer Ferry, Inc.*, 390 U.S. at 424); *see also In re Key3Media Group*, 2005 Bankr. LEXIS 2606, at \*10 (The bankruptcy court must be "apprised of all relevant information that will enable it to determine what course of action will be in the best interest of the estate.") (quoting *In re Martin*, 91 F.3d at 393).

43.     In particular, courts consider the following four factors when determining whether a settlement is in the best interests of the estate: (i) the probability of success in the litigation; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attendant thereto; and (iv) the paramount interest of the creditors and a proper deference to their

17

reasonable opinions. *In re Martin*, 91 F.3d at 393; *In re Jasmine, Ltd.*, 258 B.R. 119, 123 (Bankr. D.N.J. 1999); *In re Key3Media Group*, 2005 Bankr. LEXIS 2606, at *11; *In re Marvel*, 222 B.R. at 249.

44.    In addition to these criteria, courts have also scrutinized additional factors, such as (i) the competency and experience of counsel who support the settlement; (ii) the relative benefits to be received by individuals or groups within the class; (iii) the nature and breadth of releases to be obtained by the parties to the settlement; and (iv) the extent to which the settlement is the product of arm's length bargaining. *See Fischer v. Pereira (In re 47-49 Charles Street, Inc.)*, 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. S.D.N.Y. 1997); *In re Dow Corning Corp.*, 198 B.R. 214, 223 (Bankr. E.D. Mich. 1996).

45.    The bankruptcy court is not required to determine that the proposed settlement is the best possible compromise. *In re Key3Media Group*, 2005 Bankr. LEXIS 2606, at *11 (citing *In re Coram Healthcare Corp.*, 315 B.R. 321, 329 (Bankr. D. Del. 2004)). Rather, the settlement should be approved as long as it does not fall below the lowest point in the range of reasonableness. *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir.), *cert. denied*, 464 U.S. 822 (1983). In this respect, it is unnecessary for the court to consider the information necessary to resolve the factual dispute, nor is necessary for the bankruptcy court to "conclusively determine claims subject to a compromise." *In re Key3Media Group*, 2005 Bankr. LEXIS 2606, at *10 (quoting *In re Martin*, 212 B.R. 316, 319 (8th Cir. B.A.P. 1997)).

## A.    The Agreement is in the Best Interests of the Debtors and Their Estates

46.    The Movants respectfully submit that the Settlement is well within the range of reasonableness and in the best interests of the Debtors' estates. The Settlement is the product of good faith negotiations conducted at arm's length by experienced counsel, which

18

resolves a significant administrative claim asserted against the Debtors' estates. The WARN

Action involves numerous legal issues regarding the application of the WARN Act and its

statutory and other legal defenses to complex facts.[8] Continued litigation would be costly and

time-consuming and expose the Debtors' estates to significant litigation risks. The Class

estimated that the Debtors' WARN Act liability of sixty (60) days damages could exceed $11.3

million, which constitutes an alleged administrative expense. The settlement provides for the

creation of a $2.6 million settlement fund which resolves those claims and eliminates any further

accrual of the substantial litigation expenses which have been associated with the WARN

Action. Accordingly, the Movants respectfully submit that approval of the Settlement is

warranted.[9]

III.     THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED AND,
         AT THE FAIRNESS HEARING, FINALLY APPROVED AS FAIR,
         REASONABLE AND ADEQUATE TO THE CLASS

   A.    The Settlement Should Be Preliminarily Approved

         47.     Pursuant to the Civil Procedure Rules, "[t]he court must approve any

settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified

---

[8] Such issues include, *inter alia*, (i) whether the Debtor-Defendants' Protective WARN Notice provided adequate notice to the Class Members under the WARN Act; (ii) whether the Protective Notice was defective under the WARN Act; (iii) whether the Debtor-Defendants were entitled to give fewer than 60 days notice because of the unforeseeable business circumstance; (iv) whether the Debtor-Defendants were entitled to give fewer than 60 days notice because, at the time notice would otherwise have been required, they were seeking new capital they reasonably believed, if obtained, would have obviated or substantially postponed the alleged plant closing or mass layoffs; (v) whether the Debtor-Defendants' efforts to obtain new capital were commercially reasonable under the circumstances; (vi) whether the Debtor-Defendants have other defenses to the application of the WARN Act; (vii) whether the employment losses allegedly suffered by the aggrieved employees were caused by the Debtor-Defendants' failure to obtain capital or business; (viii) whether the Debtor-Defendants gave "as much notice as practicable"; (ix) whether the Debtor-Defendants are entitled to a defense of "good faith"; (x) the computation of the amount of damages; (xi) whether the Debtor-Defendants are entitled to set-offs against damages for sums paid post-petition to employees; (xii) whether attorneys' fees are to be awarded to the Class Members if they prevail; and (xiii) whether the alleged damages are entitled to administrative priority under § 503(b)(1)(A) or wage or benefit priority under §§ 507(a)(4) or (5), respectively.

[9] In the event that the Settlement is not approved by the Bankruptcy Court or the Settlement does not become binding and enforceable for any reason, the Movants reserve all of their rights.

class." FED. R. CIV. P. 23(e)(1)(A). Accordingly, the Court has authority to conduct a preliminary fairness review of a proposed class action settlement. MANUAL FOR COMPLEX LITIGATION (Fourth) § 32.632 (2004). As part of a preliminary fairness review, the Court must "make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)" and "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Id.*

### B. The Settlement Should Be Finally Approved at the Fairness Hearing

48. Fed. R. Civ. P. 23(e)(1)(C) provides that

> [t]he court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate.

FED. R. CIV. P. 23(e)(1)(C).

49. In *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), the Third Circuit delineated the nine factors that are to be weighed in determining whether a settlement should be approved as fair, reasonable and adequate to a class under Civil Procedure Rule 23(e)(1)(C) as follows:

> (1) the complexity, expense and likely duration of the litigation ...; (2) the reaction of the class to the settlement ...; (3) the stage of the proceedings and the amount of discovery completed ...; (4) the risks of establishing liability ...; (5) the risks of establishing damages ...; (6) the risks of maintaining the class action through trial ...; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery ...; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation... .

20

*Id.* at 157.

50.     The Movants submit that not only should the Settlement be approved

pursuant to Bankruptcy Rule 9019 as set forth above, but the Settlement should also be approved

as fair, reasonable and adequate to the Class under the nine factors enumerated by the Third

Circuit.

- As set forth above, the WARN Action would have been complicated, protracted and expensive.

- The Class Representatives support the Settlement and Class Counsel believes that the bulk of the other Class Members will have a favorable reaction to the Settlement and not object to it or opt out of it.

- The Settlement was reached after the essential facts had been thoroughly investigated by Class Counsel through interrogatories, document requests and informal disclosure.

- As set forth above, the risks of being unable to establish liability and damages were significant because of the numerous defenses asserted by the Debtors.

- The Settlement provides for 23% of the estimated maximum possible recovery (81% considering reductions and offsets to damages likely available to Debtor-Defendants).

- The Settlement is well within the range of reasonableness given the uncertainty of establishing liability and damages.

For all the foregoing reasons, the Settlement should be approved as fair, reasonable and adequate

to the Class.

### Notice

51.     Bankruptcy Rule 2002 requires that the Debtors give all creditors not less

than 20 days notice of "the hearing on approval of a compromise or settlement of a controversy

unless the court for cause shown directs that the notice be not sent..." FED. R. BANKR. P.

2002(a)(3).

52.     The Movants propose that notice, together with a copy of this Motion

21

exclusive of the lists of individual employees, be provided to: (i) the Office of the United States Trustee, and (ii) all parties which have requested notice pursuant to Bankruptcy Rule 2002. In order to protect the privacy of the Debtors' former employees, the Movants have filed contemporaneously herewith a separate motion seeking to submit the employee lists annexed to the Settlement Agreement as *Exhibit 1b* through *Exhibit 4* under seal. In light of the nature of the relief requested, the Movants submit that no other or further notice need be given.

53.     No previous application for the relief sought herein has been made to this or any other Court.

## CONCLUSION

**WHEREFORE**, the Movants respectfully request that this Court (1) enter (a) an order, substantially in the form annexed hereto as *Exhibit 2*, (i) preliminarily approving the Settlement; (ii) approving the form and manner of the Additional Class Notice; and (iii) scheduling a Fairness Hearing to consider objections to the Settlement and to decide whether the Settlement should be finally approved; and (b) a second order, finally approving the Settlement at the Fairness Hearing; and (2) granting such other relief as may be just and proper.

877285.010·1479457.5
127340.01600/40176235v.1

Dated: August 2*b*, 2008

MARGOLIS EDELSTEIN
James Huggett (No. 3956)
750 S. Madison Street, 1st Floor
Wilmington, DE 19801
Tel:    (302) 777-4680
Fax:   (302) 777-4682

-and-

THE GARDNER FIRM, P.C.
Mary E. Olsen
M. Vance McCrary
1119 Government Street
Post Office Drawer 3103
Mobile, AL 36604
Tel:    (251) 433-8100
Fax:   (251) 433-8181

-and-

LANKENAU & MILLER, LLP
Stuart J. Miller (SJM 4276)
132 Nassau Street, Suite 423
New York, New York 10038
Tel:    (212) 581-5005
Fax:   (212) 581-2122

*Co-Counsel for the Class*

23

Dated: August 26, 2008

/s/ David W. Carickhoff
BLANK ROME LLP
Bonnie Glantz-Fatell (No. 3809)
David W. Carickhoff (No. 3715)
1201 Market Street, Suite 800
Wilmington, DE 19801
Tel:    (302) 425-6400
Fax:    (302) 425-6464

-and-

HAHN & HESSEN LLP
Mark Indelicato
Jeffrey Zawadzki
488 Madison Avenue
New York, NY  10022
Tel:    (212) 478-7320
Fax:    (212) 478-7400

*Co-Counsel for the Liquidating Trust*

877285.010-1479457.5
127340.01600/40176235v.1