# EXHIBIT 1

SETTLEMENT AND RELEASE AGREEMENT

between

RICHARD D. AUSTIN, LAUREN V. LIVA, MICHAEL VANDALL, SCOTT
RASMUSSEN, MARTHA F. MORELAND, CARLA LYLES, TRAVIS KELLY AND
JAMES HOLZGANG, ON BEHALF OF THEMSELVES AND AS CLASS
REPRESENTATIVES ON BEHALF OF THE OTHER CLASS MEMBERS,

and

NEW CENTURY TRS HOLDINGS, INC., NEW CENTURY FINANCIAL
CORPORATION, NEW CENTURY MORTGAGE CORPORATION, and
HOME123 CORPORATION

AND

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF NEW
CENTURY TRS HOLDINGS, INC., AND ITS AFFILIATED DEBTORS

Dated as of August 1, 2008

## SETTLEMENT AND RELEASE AGREEMENT

This SETTLEMENT and RELEASE AGREEMENT, dated as of August 1, 2008 (this "Settlement"), is entered into by and among Richard D. Austin, Lauren V. Liva, Michael Vandall, Scott Rasmussen, Martha F. Moreland, Carla Lyles, Travis Kelley and James Holzgang (individually and together, the "Class Representatives"), on behalf of themselves and on behalf of similarly situated class members (together with the Class Representatives, the "Class Members" or "Plaintiffs"); New Century TRS Holdings, Inc., a Delaware corporation, New Century Financial Corporation, a Maryland corporation, New Century Mortgage Corporation, a California corporation, and Home123 Corporation, a California corporation (all debtors and debtors in possession together, the "Debtor-Defendants"); and the Official Committee of Unsecured Creditors of the Debtors (the "Committee"). The Class Members, the Debtor-Defendants and the Committee are collectively referred to herein as the "Parties," or, as to each, a "Party."

## RECITALS:

WHEREAS, on April 2, 2007 (the "Petition Date"), New Century Financial Corporation and its direct and indirect subsidiaries, filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), 11 U.S.C. §§ 101 *et seq.*, with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, on August 3, 2007, New Century Warehouse Corporation (together with the above-referenced entities that filed chapter 11 petitions on the Petition Date, the

"Debtors"), filed a voluntary petition for relief under the Bankruptcy Code with the Bankruptcy Court;

WHEREAS, the Debtors' bankruptcy cases currently pending in the Bankruptcy Court (the "Bankruptcy Cases") are being jointly administered as *In re New Century TRS Holdings, Inc., et al.*, Case No. 07-10416 (KJC);[1]

WHEREAS, as of the Petition Date, the Debtors employed approximately 6,725 people, including the Class Members, in their various business operations;

WHEREAS, on the Petition Date, the Debtors terminated approximately 2,857 employees, including approximately 1,185 Class Members (the "April RIF");

WHEREAS, the Debtor-Defendants contend that on the Petition Date, they delivered or mailed a letter (the "Protective WARN Notice") to certain employees subject to the April RIF that the Debtor-Defendants contend constituted adequate notice under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 *et seq.*, and/or its California counterpart, California Labor Code §§ 1400 *et seq.* (collectively, the "WARN

---

[1] The Debtors are the following entities: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporation, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home123 Corporation (f/k/a The Anyloan Corporation, 1800anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, Ad Astra Mortgage, Midwest Home Mortgage, TRATS Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company; NCoral, L.P., a Delaware limited partnership; and New Century Warehouse Corporation, a California corporation.

Act") of any plant closing or mass layoff affecting such persons to the extent that the WARN Act was applicable;

WHEREAS, pursuant to an order entered by the Bankruptcy Court on April 3, 2007, the Debtors were authorized to make payments to certain of the Debtors' employees for wages and benefits that had accrued prior to the Petition Date;

WHEREAS, on or about April 9, 2007, the Committee was appointed;

WHEREAS, on April 17, 2007, certain Class Representatives filed with the Bankruptcy Court a class-action complaint (the "Complaint"), commencing an adversary proceeding (the "WARN Action") against the Debtor-Defendants, alleging that the Debtor-Defendants violated the WARN Act by ordering plant closings and/or mass layoffs on or about April 2, 2007 and thereafter, without providing sixty days of advance notice thereof. Those Class Representatives further asserted that, as a consequence of this alleged failure, the affected employees have an Administrative Priority claim pursuant to §503(b)(1)(A) against the Debtor-Defendants for damages for the sixty day violation period. The WARN Action is titled *Richard D. Austin, Lauren V. Liva, Michael Vandall, Scott Rasmussen, and Martha F. Moreland, on their own behalf and on behalf of all other persons similarly situated, v. New Century TRS Holdings, Inc., New Century Financial Corporation, New Century Mortgage Corporation, and Home123 Corporation*, and is presently pending in the Bankruptcy Court as Adversary Proceeding No. 07-50970 (KJC);

WHEREAS, a First Amended Complaint (the "FAC"), containing substantively similar allegations, was filed on April 18, 2007;

WHEREAS, approximately 3,868 of the Debtors' employees, including certain Class Members, remained employed by the Debtors subsequent to the Petition Date;

WHEREAS, during the period from May 4, 2007 through June 3, 2007, the Debtors terminated approximately 1,879 employees, including approximately 349 Class Members (the "May RIF");

WHEREAS, the Debtor-Defendants contend that on or prior to May 4, 2007, and during the 30 days following immediately thereafter, they delivered or mailed a Protective WARN Notice to certain employees subject to the May RIF that the Debtor-Defendants assert constituted adequate notice under the WARN Act of any plant closing or mass layoff affecting such persons to the extent that the WARN Act was applicable;

WHEREAS, on or about April 18, 2007 through August 31, 2007, certain Class Members filed individual proofs of claim against the Debtor-Defendants in the Bankruptcy Cases for amounts allegedly owed under the WARN Act ("Individual Proofs of Claim"), but no proof of claim was filed collectively on behalf of the Class Members;

WHEREAS, on or about June 8, 2007, the Debtor-Defendants filed their answer and affirmative defenses (the "Answer") to the FAC;

WHEREAS, the Answer denied certain material allegations of the FAC and asserted, among their affirmative defenses, (i) the FAC was barred by the liquidating fiduciary doctrine; (ii) the FAC was barred by the faltering company defense as enumerated in 29 U.S.C. § 2102(b)(1); (iii) the FAC was barred by the unforeseen business circumstances defense as enumerated in 29 U.S.C. § 2102(b)(2)(A); (iv) the Debtor-Defendants acted in good faith and had reasonable grounds for believing the timing

of any individual's termination was lawful; (v) the Debtor-Defendants reasonably and in

good faith believed that no prior WARN Act notice was required and that such notice

provided, solely out of an abundance of caution, was fully adequate; and (vi) the

Debtor-Defendants made a number of voluntary payments to the Class Members that

should offset any alleged damage suffered by the Class Members;

     WHEREAS, on or about August 15, 2007, certain Class Representatives filed a

motion for class certification and other relief;

     WHEREAS, on or about September 11, 2007 the Bankruptcy Court granted class

certification (the "Class Certification Order").[2] The Class Certification Order, entered on

September 12, 2007, provided for the following:

1.    The certification of a class (the "Class") comprised of the following two subclasses:

    a.    All former employees of defendants New Century TRS Holdings, Inc. New Century Financial Corporation, New Century Mortgage Corporation and Home123 Corporation (collectively, "Defendants") who were terminated without cause from their employment at Defendants' facilities (the "Facilities") during the period April 2, 2007 to May 1, 2007, as part of, or as the reasonably expected consequence of, a mass layoff or plant closing, as defined by the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq. and/or its California counterpart California Labor Code §§ 1400 et seq. (the "WARN Act"), at the Defendants' Facilities, who have not validly released their WARN Act claims and who do not file a timely request to opt-out of the class ("Subclass One"); and

---

[2] A Revised Order Granting Class Certification was entered on October 19, 2007.

        b.      All former employees of Defendants who were terminated without cause from their employment at the Facilities during the period May 2, 2007 or thereafter, as part of, or as the reasonably expected consequence of, a mass layoff or plant closing, as defined by the WARN Act, at the Facilities who have not validly released their WARN Act claims and who do not file a timely request to opt-out of the class ("Subclass Two").

3.      Plaintiffs Richard D. Austin, Lauren V. Liva, Michael Vandall, Scott Rasmussen, Martha F. Moreland, and Carla Lyles were appointed class representatives of Subclass One. Within 30 days of entry of the Order, Plaintiffs were to propose class representative(s) for Subclass Two.

4.      Margolis Edelstein, The Gardner Firm, P.C. and Lankenau & Miller, LLP were appointed class counsel (collectively, "Class Counsel").

The Class Certification Order also ordered that notice be mailed by Class Counsel to each Class Member informing them of, among other things, the litigation and their right to opt-out of their designated sub-class (the "Initial Class Notice");

WHEREAS, Class Counsel mailed the Initial Class Notice to Class Members whose names and addresses were supplied by counsel for the Debtor-Defendants ("Debtor-Defendants' Counsel") on or about October 12, 2007. See Exhibit 1, attached hereto. The Debtor-Defendants had provided an initial list of Class Members (the "Initial Class Member List") pursuant to the Class Certification Order and a Confidentiality Stipulation between Class Representatives and the Debtor-Defendants (entered October 19, 2007). The Initial Class Member List was based on the best information available to the Debtor-Defendants at the time and was transmitted to Class Counsel in good faith;

WHEREAS, on October 18, 2007, the Debtor-Defendants requested that the Bankruptcy Court enter a Revised Order Granting Class Certification. Among other things, the Revised Order Granting Class Certification (entered on October 22, 2007) extended the deadline for Class Counsel to designate representatives for Subclass Two to October 23, 2007;

WHEREAS, on October 23, 2007, Class Counsel designated Travis Kelley and James Holzgang as representatives for Subclass 2. As there was no objection from the Debtor-Defendants' Counsel, the former employees joined the representatives for Subclass One to become Class Representatives, collectively;

WHEREAS, mailing of the Initial Class Notice, including opt-out instructions, was completed on or about October 30, 2007;

WHEREAS, in response to the Initial Class Notice, the following five (5) individuals timely opted out of their sub-class: Lorrena Borras, Susan Feagans, Veronica Roberts, Elizabeth Coolidge and Virginia Goodson (collectively, the "Initial Opt-Outs"). Having opted-out of their determined sub-class, these individuals are not entitled to share in the Settlement Fund, as described below;

WHEREAS, in a continuing effort to verify the accuracy of the Class Member information being provided to Class Counsel, the Debtor-Defendants subsequently discovered that the Initial Class Member List inadvertently omitted certain persons within the definition of the two sub-classes and included persons falling outside of the two sub-classes. The Debtor-Defendants disclosed this information to Class Counsel and provided a supplemental list of Class Members (the "Supplemental Class Member List") in

January 2008. See Exhibit 2 attached hereto. As a consequence, certain Class Members did not receive the Initial Class Notice and have never been afforded an opportunity to opt out of the WARN Action (the "New Class Members"). Class Counsel and Debtor-Defendants' Counsel continued to negotiate the precise classification of employees subject to either the April RIF or the May RIF;

WHEREAS, the 1,529 persons listed on Exhibit 3 constitute, to the best of the Debtor-Defendants' knowledge, information and belief, all the individuals that are currently within the definition of the two sub-classes (the "Final Class Member List"). Further, 86 employees ineligible for either sub-class were inadvertently listed on the Initial Class Member List (the "Ineligible Class Members"). Attached hereto as Exhibit 4 is a list of the names and addresses of the Ineligible Class Members and the reason why each person is classified as ineligible (the "Ineligible Class Member List");

WHEREAS, on or about February 5, 2008, the Bankruptcy Court entered an Order approving a joint stipulation and agreement permitting the Committee to intervene in the WARN Action;

WHEREAS, the Parties have engaged in substantial discovery in this matter;

WHEREAS, the issues in this proceeding are complex and include:

- whether the Debtor-Defendants' Protective WARN Notice provided adequate notice to the Class Members under the WARN Act;

- whether the Protective WARN Notice was defective under the WARN Act;

- whether the Debtor-Defendants were entitled to give fewer than 60 days notice because of unforeseen business circumstances;

- whether the Debtor-Defendants were entitled to give fewer than 60 days notice because, at the time notice would otherwise have been required, if they were seeking new capital they reasonably believed, if obtained, would have obviated or substantially postponed the alleged plant closings or mass layoffs;

- whether the Debtor-Defendants' efforts to obtain new capital were commercially reasonable under the circumstances;

- whether the Debtor-Defendants have other defenses to the application of the WARN Act;

- whether the employment losses allegedly suffered by the aggrieved employees were caused by the Debtor-Defendants' failure to obtain capital or business;

- whether the Debtor-Defendants gave "as much notice as is practicable;"

- whether the Debtor-Defendants are entitled to a defense of "good faith;"

- the computation of the amount of damages;

- whether the Debtor-Defendants are entitled to set-offs against damages for sums paid post-petition to employees;

- whether attorneys' fees are to be awarded to the Class Representatives and the Class Members if they prevail; and

- whether the alleged damages are entitled to administrative priority under §503(b)(1)(A) or wage or benefit priority under §§507(a)(4) or (5), respectively;

WHEREAS, the Plaintiffs have the burden of proof on some of these issues and the Debtor-Defendants have the burden on others, including their major affirmative defenses, the trial of this matter would likely be lengthy and complex, adding to cost and potential delay;

WHEREAS, all Parties recognize that the outcome of the litigation with respect to all the issues is uncertain;

WHEREAS, in order to avoid the cost and uncertainty of lengthy litigation and the delay incident to that litigation, the Parties wish to enter into a complete and final settlement and release of any and all Released Claims (as defined below) that do, could or may hereafter belong to Eligible Class Members (defined below), on the terms and conditions set forth herein;

WHEREAS, the settlement negotiations between the Parties, which were conducted in good faith and at arm's length, involved the exchange of various information requested by Class Counsel and numerous settlement proposals;

WHEREAS, pursuant to the Order confirming Chapter 11 Plan (the "Confirmation Order") relating to the Bankruptcy Cases, the Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors dated as of April 23, 2008 (the "Plan") has been entered, and upon the Effective Date (as defined in the Confirmation Order) the assets of the New Century Liquidating Trust (the "Liquidating

- whether the alleged damages are entitled to administrative priority under §503(b)(1)(A) or wage or benefit priority under §§507(a)(4) or (5), respectively;

WHEREAS, the Plaintiffs have the burden of proof on some of these issues and the Debtor-Defendants have the burden on others, including their major affirmative defenses, the trial of this matter would likely be lengthy and complex, adding to cost and potential delay;

WHEREAS, all Parties recognize that the outcome of the litigation with respect to all the issues is uncertain;

WHEREAS, in order to avoid the cost and uncertainty of lengthy litigation and the delay incident to that litigation, the Parties wish to enter into a complete and final settlement and release of any and all Released Claims (as defined below) that do, could or may hereafter belong to Eligible Class Members (defined below), on the terms and conditions set forth herein;

WHEREAS, the settlement negotiations between the Parties, which were conducted in good faith and at arm's length, involved the exchange of various information requested by Class Counsel and numerous settlement proposals;

WHEREAS, pursuant to the Order confirming Chapter 11 Plan (the "Confirmation Order") relating to the Bankruptcy Cases, the Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors dated as of April 23, 2008 (the "Plan") has been entered, and upon the Effective Date (as defined in the Confirmation Order) the assets of the New Century Liquidating Trust (the "Liquidating

11

Trust", and its representative the "Liquidating Trustee"), will be vested with all assets of the Debtor-Defendants;

WHEREAS, the Liquidating Trust, as successor to debtors and debtors in possession, will assume all obligations of the Debtor Defendants to pay allowed claims;

WHEREAS, the Parties have agreed to settle claims relating to the Debtor-Defendants' alleged failure to provide adequate notice under the WARN Act in exchange for the payment of damages;

NOW, THEREFORE, in consideration of the mutual promises contained herein, the sufficiency of which is acknowledged and intended to be binding, the Parties agree as follows:

1. **Hearings.** The Parties shall file a joint motion for approval of the Settlement through a bifurcated hearing process (the "Motion"). The Motion shall request an initial hearing (the "Initial Hearing") at which time the Parties shall seek entry of an order from the Bankruptcy Court preliminarily approving the Settlement, and approving the form and manner of notice to the Class Members of the Settlement, including, among other things, their right to opt out of the Class (if they have not previously been presented that right), object to the Settlement or appear by counsel. The Parties shall also request a date for a fairness hearing (the "Fairness Hearing"). The date of the Fairness Hearing shall be no earlier than the earliest date for entry of a binding order under 28 U.S.C. § 1715 (a)-(d). At the Fairness Hearing, the Bankruptcy Court will consider the final approval of the Settlement, including the award of Class Counsel's fees as well as the authority of the Debtor-Defendants and the Liquidating Trust to enter into the agreement.

2.	**The Settlement Fund.** The Settlement Fund shall consist of two million six hundred thousand dollars ($2,600,000.00) to be paid to Class Counsel by the Liquidating Trust within five (5) business days after the Final Approval Date (as defined below). Class Counsel shall determine the amount of all distributions under this Settlement and shall have the option to engage a third-party acceptable to the Parties to issue all notices to the Class Members (as defined below), disbursement checks and 1099 Forms. Further, the Liquidating Trust shall contribute ten thousand dollars ($10,000.00), in addition to and separate from the Settlement Fund, for the purpose of covering a portion of these administrative costs.

3.	**Responsibilities of Class Counsel.** Class Counsel shall bear the cost and the ultimate responsibility for the preparation of distribution checks and the production and mailing of all notices to be required for the Class Members (the "Class Notices"). In addition, Class Counsel shall certify that such 1099 Forms have been properly mailed to all Class Members (as defined below) with the Settlement Fund disbursements. The address of Class Counsel will be used as the return address for the Class Notices and checks mailed to the Class Members.

4.	**Class Counsel's Fees.** Class Counsel is entitled to attorneys' fees in the amount of 33-1/3% of the Settlement Fund as payment in full for their work in connection with this matter. Once approved, Class Counsel may deduct from the Settlement Fund the attorneys' fees pursuant to this Settlement prior to the distribution of settlement payments to the Class Members.

5. **The Allocation of the Settlement Fund to Eligible Class Members and the Distribution of Residual Funds.**

(a)     Classification of Eligible Class Members. The individuals eligible to share in the Settlement Fund created under this Settlement (the "Eligible Class Members") are those Class Members, other than the Initial Opt-Outs, combined with the New Class Members who do not opt-out.

(b)     Allocation of Settlement Fund. Initial distribution of the Settlement Fund shall be made in a lump sum of $2.6 million from the Liquidating Trust to Class Counsel and deposited into a trust account established by Class Counsel. The gross individualized amount of the Settlement Fund shall be allocated to each Eligible Class Member (which, after payment of $16,000.00 for service fees paid to the Class Representatives and payment of attorneys' fees in the amount of 33 1/3 % to Class Counsel, shall consist of $1,724,000.00) as determined by Class Counsel. The method used to calculate Settlement Fund payments due to each Eligible Class member is described in detail in Exhibit 5.

(c)     Notification of Tax Consequences to Eligible Class Members. Class Counsel shall provide the Eligible Class Members with a written explanation of the tax consequences of accepting disbursement from the Settlement Fund and the deduction of Class Counsel's fees. Such written explanation shall be included with each disbursement check to the Eligible Class Members.

(d)     Service payments to Class Representatives. The Class Representatives shall each receive a one-time payment of two thousand dollars ($2,000.00)

for their service in this matter. Class Counsel shall distribute this payment to the Class Representatives in addition to their individualized settlement amounts.

(e) Distribution of Residual Funds. If settlement checks issued to Eligible Class Members remain uncashed as of the 241st day after the initial distribution (the "Residual Funds"), such funds shall be disbursed to The Impact Fund, a non-profit organization dedicated to employee rights. No portion of the Residual Funds will revert to the Debtor-Defendants or the Liquidating Trust for any reason, or be retained by Class Counsel.

(f) Released Claims of Eligible Class Members. For purposes of this Settlement, the term released claims ("Released Claims") shall mean the claims of each Eligible Class Member, for any alleged failure to provide adequate notice under the WARN Act and any claims arising out of the termination of their employment with the Debtor-Defendants, whether based on the WARN Act or any other federal, state or local law, regulation or ordinance. Not included in Released Claims are (i) any obligation created by or arising out of this Settlement; (ii) any right to indemnification that the Eligible Class Members may have pursuant to any articles of incorporation, certificate of incorporation, bylaws or similar governing document of any Debtor-Defendant with respect to any loss, damages or expenses (including but not limited to attorneys' fees) that an Eligible Class Member may in the future incur with respect to his or her prior service as an employee, officer or director or in any other capacity with any Debtor-Defendant; (iii) any rights that an Eligible Class Member may have to insurance coverage for such losses, damages or expenses under any directors and officers liability insurance policy of any

15

Debtor-Defendant; (iv) an Eligible Class Member's rights to continued medical coverage under COBRA; (v) any rights to payment of benefits that an Eligible Class Member may have under a qualified or nonqualified retirement plan sponsored or maintained by any Debtor-Defendant (including, without limitation, any 401(k), deferred compensation, and supplemental retirement benefits); and (vi) an Eligible Class Member's rights to benefits or coverage under any employee welfare benefit plan (as that term is defined in Section 3(1) of the Employee Retirement Income Security Act of 1974, as amended).

(g)     Civil Code § 1542 Waiver. As to the matters released in the preceding paragraph, each Eligible Class Member hereby expressly waives all rights under the provisions of Section 1542 of the Civil Code of the State of California and any similar rights in any state or territory or under any similar statute or regulation of the United States or any of its agencies. Section 1542 of this California Civil Code reads as follows:

> "A general release does not extend to claims which the
> creditor does not know or suspect to exist in his or her favor
> at the time of executing the release, which if known by him or
> her must have materially affected his or her settlement with
> the Debtor."

Each Eligible Class Member acknowledges that the significance of this waiver of Section 1542 of the Civil Code is that even if he or she should eventually suffer additional damages arising out of the matters released in this Settlement, he or she will not be able to make any claim for those damages. Each Party represents, warrants and agrees that this waiver is a material term of this Settlement, without which no Party would have entered into this Settlement.

6. **The Class Notice.**

(a)      As noted above, Class Counsel shall bear the cost and responsibility of the preparation of the Class Notices. Class Counsel's address will be used as the return address for the Class Notices so that any returned Class Notices will be returned to Class Counsel. Class Counsel shall mail the Class Notices by first class mail to the Eligible Class Members at the addresses listed on Exhibit 3 no later than 10 days after preliminary approval of this Settlement by the Bankruptcy Court. The Class Notice shall be in substantially the form annexed hereto as Exhibit6 or such substantially similar form as may be approved by the Bankruptcy Court.

(b)      Contents of the Class Notice. The Class Notice shall contain the following information, which shall be individualized for each Class Member:

- If a Class Member has been determined to be an Ineligible Class Member, the Class Notice shall state the reason such Class Member is now believed not to come within the definition of the two designated sub-classes and shall afford such Ineligible Class Member an opportunity to dispute such classification by contacting Class Counsel;

- That each Eligible Class Member has the right to opt out (if they have not already been provided that right) of the Class and preserve all of her/his rights against the Debtor-Defendants, if any, including Released Claims (all such opting out Eligible Class Members, the "Additional Opt-Outs");

- The date such Eligible Class Member was terminated, the office location to which the Eligible Class Member was assigned as of the date of his/her termination, and the Eligible Class Member's base salary on the date of termination;

- That the Settlement shall become effective only if it is finally approved by the Bankruptcy Court;

- That the Settlement shall be effective as to all Eligible Class Members who do not opt-out of the class; however, if the Bankruptcy Court does not approve the Settlement, or if more than 5% of the Eligible Class Members opt-out and the Liquidating Trust exercises its option to withdraw from the Settlement, the Settlement shall not become effective;

- The dollar amount such Eligible Class Member would receive under this Settlement, before attorneys' fees and if this Settlement becomes effective, as well as an estimate of such net payment after such amounts are deducted, which amount shall be calculated by Class Counsel;

- That such Eligible Class Member has the right to object to this Settlement, to retain counsel and be heard at the Fairness Hearing;

- That all Released Claims of an Eligible Class Member (other than those claims to be paid under the terms of this Settlement) shall be waived, and that no person, including the Eligible Class Member, shall be entitled to any further distribution thereon.

18

(c)     <u>Representation and Covenant as to Exhibit 3</u>.  The

Debtor-Defendants represent that to the best of their knowledge, information and belief,

the information contained in <u>Exhibit 3</u> hereto accurately reflects the contents of their books

and records as to each Eligible Class Member, as follows: (i) the last known mailing

address at the time of termination (unless the employee has provided a change of address to

the Debtor-Defendants); (ii) the base salary of each Class Member at the time of

termination; (iii) the year-to-date gross pay for each Class Member at the time of

termination ; and (iv) the date of termination of the Class Member's employment.  Further,

the Debtor-Defendants represent that to the best of their knowledge, information and belief,

the information contained in <u>Exhibit 4</u> hereto accurately reflects the contents of their books

and records as to each Ineligible Class Member as to the reason why such employee has

been classified as an Ineligible Class Member and thus not entitled to a distribution under

this Settlement.

7.     **Objection to Settlement Procedures**.  At or before such time as may be

fixed by the Bankruptcy Court for final approval of this Settlement at the Fairness Hearing,

a Class Member may object to this Settlement by sending timely written notice of such

objection (a "<u>Notice of Objection</u>") to Class Counsel the Debtor Defendants' Counsel and

the Liquidating Trustee and its counsel at the addresses set forth in Section 17(d) below and

filing such Notice of Objection with the Bankruptcy Court.  Such objection shall clearly

specify the relief sought and the grounds for such relief.

8. **Right of Employee to Opt Out of Class.**

(a)      By no later than five (5) business days before the date fixed by the Bankruptcy Court for the filing of the Notice of Objection, any New Class Member not previously afforded the right to opt-out, may opt-out of the Class by mailing to Class Counsel the completed and executed Opt-Out Notice Form attached as Exhibit 7 to the Class Notice. Upon the receipt of such timely notice by Class Counsel, such New Class Member shall be classified as an additional Opt-Out ("Additional Opt-Out"). Class Counsel shall timely provide the Liquidating Trust with a list of the New Class Members who have timely returned an Opt-Out Notice Form.

(b)      If a New Class Member does not wish to be bound by this Settlement, such New Class Member must opt-out of the Class by returning a completed and executed Opt-Out Notice Form. Otherwise, if and when the Settlement becomes effective, all New Class Members shall be bound by the terms of this Settlement just as the other Class Members who had previously been afforded the right to opt-out and chose not to do so.

(c)      Notwithstanding anything to the contrary in this Settlement, nothing contained herein shall release or impair the rights and claims, if any, of the Initial Opt-Outs, any Additional Opt-Outs or Ineligible Class Members, nor shall anything contained herein affect the defenses and offsets that the Debtor-Defendants, their estates, their respective subsidiaries, their respective affiliates, any successors thereto, or any of the present or former officers, directors, employees, agents, lawyers, consultants, stockholders or

members of any thereof or the Liquidating Trust, as successor to the Debtor-Defendants, may have against any such rights or claims.

9. **Acceptance and Effectiveness of the Settlement.**

(a)        Bankruptcy Court Approval. The effectiveness of this Settlement shall be subject to and contingent upon the entry of an order of the Bankruptcy Court (not subject to judicial review) at the Fairness Hearing, reasonably satisfactory to each of the Parties hereto, approving this Settlement and upon such order having become final and non-appealable (the date of such order becoming final and non-appealable, the "Final Approval Date").

(b)        The effective date of this Settlement is the Final Approval Date.

(c)        Within five (5) business days of the Final Approval Date, the Liquidating Trust shall distribute the Settlement Fund to Class Counsel in accordance with the terms of this Settlement.

10. **The Waiver and Release of any Released Claims by All Eligible Class Members if the Settlement Becomes Effective.**

(a)        Upon the Final Approval Date, all Eligible Class Members, other than the Initial Opt-Outs or Additional Opt-Outs (the "Releasing Parties"), shall release or be deemed to release any and all Released Claims as that term is defined in Section 5(f) of this Settlement. And, such Released Claim shall be deemed waived by such Releasing Party and expunged in its entirety, and such Releasing Party shall not be entitled to any further distribution in respect of such Released Claim.

(b)     Each Releasing Party shall be deemed as of the Final Approval Date to have settled, released and extinguished completely any and all Released Claims, liquidated or unliquidated, contingent or non-contingent, asserted or unasserted, fixed or not, matured or unmatured, disputed or undisputed, legal or equitable, known or unknown that such Releasing Party may have against the Debtor-Defendants their estates, their respective subsidiaries, their respective affiliates, any successors thereto, or any of the present or former officers, directors, employees, agents, lawyers, consultants, stockholders or members of any thereof or the Liquidating Trust, as successor to the Debtor-Defendants, including without limitation any Released Claim arising out of any Individual Proofs of Claim. In addition, each Releasing Party shall be deemed as of the Final Approval Date to have released each of the Class Representatives from any and all claims whether liquidated or unliquidated, contingent or non-contingent, asserted or unasserted, fixed or not, matured or unmatured, disputed or undisputed, legal or equitable, known or unknown that he/she may have against the Class Representatives, any successors or assignees to their legal interests, or any of their present or former agents, lawyers or consultants arising out of any Released Claim or the terms of this Settlement.

11.     **Liquidating Trust's Right to Withdraw from the Settlement Agreement.** If more than 5% of the Eligible Class Members opt-out, the Liquidating Trust at its sole option may withdraw from the Settlement within seven (7) days of the date it is determined that more than 5% exercised that option. Upon the Liquidating Trust's withdrawal from the settlement, (i) the terms of this Settlement shall not be binding upon any of the Parties hereto, (ii) none of the provisions hereof shall be used or referred to in any subsequent proceeding in

or relating to the WARN Action, and (iii) none of the provisions hereof shall prejudice or impair any rights, remedies or defenses of any of the Parties.

12. **Protection of Class Members' Confidential Information.** In order to protect the privacy of the Class Members, it is presently contemplated that the Parties shall seek to file Exhibits 1 through 3 with the Bankruptcy Court under seal. However, these schedules have been made available to and reviewed by Class Counsel, on the condition that Class Counsel is bound by an agreement not to disclose the contents thereof except that the information relating to a given former Class Member may be disclosed to that Class Member.

13. **No Litigation.** Except as may be necessary to enforce the terms of this Settlement, each of the Debtor-Defendants, the Liquidating Trust, the Class Representatives, the Releasing Parties and any other person who accepts payment hereunder agree that she or he shall not commence or proceed with any action, claim, suit, proceeding or litigation against any other Party, directly or indirectly, regarding or relating to the matters described herein, or take any action inconsistent with the terms of the Settlement.

14. **No Admission of Liability.** This Settlement is intended to settle and dispose of the Released Claims of all of the Class Members. Nothing herein shall be construed as an admission by any Party of any facts or liability of any kind.

15. **Representations and Warranties.** Each Party represents and warrants that upon Bankruptcy Court approval of this Settlement it will have the legal right and authority to enter into this Settlement and the transactions and releases contemplated hereby.

16.    **Further Assurances.** The Parties shall cooperate fully and shall execute and deliver any and all supplemental papers, documents, instruments and other assurances and shall do any and all acts that may be reasonably necessary or appropriate to give full force and effect to the terms and intent of this Settlement.

17.    **Miscellaneous.**

(a)        Continuing Jurisdiction of Bankruptcy Court. The Bankruptcy Court shall have full jurisdiction over this Settlement and any dispute or controversy with respect to the interpretation or enforcement of this Settlement.

(b)        Governing Law/Jurisdiction. Except where superseded by applicable federal law, this Settlement shall be governed by the laws of the state of California.

(c)        Public Announcement of Settlement. The Parties and their counsel agree that before final approval of the Settlement, they will not issue any press releases, initiate any contact with the press, respond to any press inquiry or have any communication with the press about this case and/or the fact, amount or terms of the Settlement. Any communication about the Settlement to Class Members prior to the Bankruptcy Court approved mailing will be limited to a statement that a settlement has been reached and the details will be communicated in a forthcoming Bankruptcy Court approved notice.

(d)        Notices. Any notice or other communication required or permitted to be delivered under this Settlement between the Debtor-Defendants, the Liquidating Trust and/or Class Counsel or from any Class Member to the Debtor-Defendants or the Liquidating Trust, Class Counsel and/or the Bankruptcy Court shall be (i) in writing, (ii)

delivered personally, by courier service or by certified or registered mail, first-class

postage prepaid and return receipt requested, (iii) deemed to have been received on the date

of delivery or, if so mailed, on the third business day after the mailing thereof, and (iv)

addressed as follows (or to such other address as the Party entitled to notice shall hereafter

designate by a written notice filed with the Bankruptcy Court):

**If to the Liquidating Trustee or the Liquidating Trust, to:**

AMJ Advisors
999 Central Avenue
Suite 208
Woodmere, New York 11598
Attention: Alan M. Jacobs, Esq.

OR

**If to the Debtor-Defendants, to:**

RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
Attention: Robert J. Stearn, Esq.

and

O'MELVENY & MYERS, LLP
275 Battery Street, Suite 2600
San Francisco, California 94111
Attention: Suzzanne S. Uhland, Esq.

**If to Class Members or Class Counsel, to:**

LANKENAU & MILLER LLP
132 Nassau Street
Suite 423
New York, New York 10038
Attention: Stuart J. Miller, Esq.

and

THE GARDNER LAW FIRM
1119 Government Street
Post Office Drawer 3103
Mobile, Alabama 36652
Attention: Mary Olsen, Esq.

**If to the Committee or the Liquidating Trust Counsel, to:**

HAHN & HESSEN LLP
488 Madison Avenue
New York, New York 10022
Attention: Mark S. Indelicato, Esq.

and

BLANK ROME LLP
1201 Market Street
Suite 800
Wilmington, DE 19801
Attention: Bonnie Glantz Fatell, Esq.

(e)     <u>Non-Severability</u>. Each of the provisions of this Settlement is a

material and integral part hereof. In the event that one or more of the provisions of this

Settlement shall become invalid, illegal or unenforceable in any respect, the entire

Settlement shall be deemed null and void unless all the Parties agree otherwise.

(f)     <u>Amendments</u>. This Settlement may not be modified, amended or

supplemented by the Parties except by a written agreement that the Parties have signed

with any required approval of the Bankruptcy Court.

(g)     <u>Integration</u>. This Settlement contains the entire agreement among

the Parties with respect to the matters covered by this Settlement, and no promise or

understanding or representation made by any Party or agent, director, officer, employee or

attorney of any Party that is not expressly contained in this Settlement shall be binding or valid.

(h)    No Third-Party Beneficiaries. This Settlement does not constitute a contract for the benefit of any third parties, any prior creditors or claimants of the Parties, or any nonparty, other than Eligible Class Members in relation to the provisions of this Settlement.

(i)    Headings. The headings of this Settlement are for convenience only and are not part of the Settlement and do not in any way define, limit, extend, describe or amplify the terms, provisions or scope of this Settlement and shall have no effect on its interpretation. Where appropriate, the use of the singular shall include the plural and the use of the masculine gender shall include the feminine gender as well.

(j)    Counterparts. This Settlement may be executed in one or more counterparts, each of which together or separately shall constitute an original and which, when taken together, shall be considered one and the same binding agreement.

(k)    Cooperation. The Parties agree to cooperate with one another to effectuate an efficient and equitable implementation of this Settlement.

(l)    Binding Nature of Settlement. This Settlement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors, transferees, assigns, heirs and estates.

IN WITNESS WHEREOF, the Parties have executed and delivered this Settlement as of the date first written above.

O'MELVENY & MYERS LLP

ON BEHALF OF THE
DEBTORS-DEFENDANTS NEW
CENTURY TRS HOLDINGS, INC., NEW
CENTURY FINANCIAL CORPORATION,
NEW CENTURY MORTGAGE
CORPORATION AND HOME123
CORPORATION

By: _____
    Name: Suzzanne Uhland
    Title: Debtor-Defendants' Counsel


THE GARDNER FIRM, P.C.

ON BEHALF OF THE CLASS
REPRESENTATIVES AND CLASS
MEMBERS

By: _____
    Name: Mary E. Olsen
    Title: Class Counsel


ON BEHALF OF THE OFFICIAL
COMMITTEE OF UNSECURED
CREDITORS OF NEW CENTURY TRS
HOLDINGS CORPORATION AND
AFFILIATED DEBTORS

By: _____
    Name: Mark S. Indelicato
    Title: Committee Counsel and the
           Liquidating Trust Counsel

# Exhibit 1a

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

-----------------------------------------------------x

In re:
NEW CENTURY TRS HOLDINGS, INC.,
a Delaware Corporation, et al.

              Debtors.

-----------------------------------------------------x

RICHARD D. AUSTIN, LAUREN V. LIVA,
MICHAEL VANDALL, SCOTT RASMUSSEN,
MARTHA F. MORELAND, and CARLA LYLES
on their own behalf and on behalf of all other
persons similarly situated,

              Plaintiffs,

        - against -

NEW CENTURY TRS HOLDINGS, INC.,
NEW CENTURY FINANCIAL CORPORATION,
NEW CENTURY MORTGAGE CORPORATION,
and HOME123 CORPORATION

              Defendants.

-----------------------------------------------------x

Case No. 07-10416-KJC

Chapter 11

Adv. Pro. No. 07-50970-KJC

Re: Dkt. No. 23

## NOTICE OF CLASS ACTION

TO:   The former employees of Defendants New Century TRS Holdings, Inc., New Century Financial Corporation, New Century Mortgage Corporation, and Home123 Corporation (collectively, "Defendants"), who were terminated without cause from their employment at Defendants' facilities, including without limitation Defendants' places of business in: Irvine, California; Melville, New York; Columbus, Ohio; and Houston, Texas (the "Facilities") during the period from April 2, 2007 or thereafter as part of or as the reasonably expected consequence of a mass layoff or plant closing at the Defendants' Facilities.

SUBJECT:   The right to participate in a lawsuit that seeks to recover up to 60 days' wages and benefits for each class member under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 et. seq. and/or its California counterpart California Labor Code §§ 1400 et seq. (the "WARN Act").

DATE:   _____, 2007

## The Nature of the Action

Richard D. Austin, Lauren V. Liva, Michael Vandall, Scott Rasmussen, Martha F. Moreland, and Carla Lyles (the "Plaintiffs"), former employees of Defendant New Century Financial Corporation, have filed a lawsuit under the WARN Act (the "Action") in the United States Bankruptcy Court for the District of Delaware against Defendants for the recovery of 60 days' wages and benefits for each class member.

Plaintiffs claim that they and the other former employees were terminated without cause from their employment at the Facilities, on or about April 2, 2007, or thereafter as part of or as the reasonably expected consequence of the mass layoff and/or plant closing at the Facilities.

Plaintiffs claim that Defendants violated the WARN Act by failing to give employees 60 days' advance written notice of their terminations, and, having not received such notice, the employees are entitled to an allowed claim in Defendants' bankruptcy cases for 60 days' wages and benefits under the WARN Act.

## The Issues and Defenses

Defendants assert certain defenses to Plaintiffs' claims and also contest the amount of the allowed claim of each class member. Among other things, Defendants claim that they were not required to give 60 days' notice of Plaintiffs' terminations because they were not employers but rather liquidating fiduciaries, because they were a faltering company, and because the terminations were precipitated by unforeseeable business circumstances. Defendants also assert that each class member's claim should be offset by the wages that were paid after the notice of termination, as well as any amounts of wages and benefits earned pre-petition that were paid after the filing of Defendants' bankruptcy cases and that exceeded the prescribed cap.

If the Action is successful, class members will be entitled to an allowed claim in Defendants' bankruptcy cases for their unpaid wages and benefits, for each day that they did not receive written notice of their impending termination, up to a maximum of 60 days. Any such claim would be reduced by amounts paid by the Defendants after filing for bankruptcy, including those paid in satisfaction of wages and benefits (such as vacation, severance and sick leave pay) that were earned prior to the bankruptcy filing, and would be subject to disallowance in accordance with 11 U.S.C. § 502(d).

Plaintiffs assert that the allowed claim will be entitled to administrative expense priority pursuant to 11 U.S.C. § 503. This means that the claims of the class (as defined below) will be assigned a higher priority than general unsecured pre-petition claims of other creditors and will therefore be paid ahead of those creditors' claims. Plaintiffs also assert that any part of the claim for 60 days' pay and benefits not given administrative priority will alternatively be given wage priority status under 11 U.S.C. § 507(a)(4) up to a maximum of $10,950, with the remainder as a general unsecured claim.

## The Definition of the Class

The Court has recently certified this case as a class action. The Class, which is composed of two subclasses, is defined as follows:

2

1. All former employees of Defendants who were terminated without cause from their employment at the Facilities during the period April 2, 2007 to May 1, 2007, as part of, or as the reasonably expected consequence of, the mass layoff or plant closing, as defined by the WARN Act, at the Defendants' Facilities, who have not validly released their WARN Act claims and who do not file a timely request to opt-out of the class ("Subclass One"); and

2. All former employees of Defendants who were terminated without cause from their employment at the Facilities during the period May 2, 2007 or thereafter, as part of, or as the reasonably expected consequence of, the mass layoff or plant closing, as defined by the WARN Act, at the Defendants' Facilities, who have not validly released their WARN Act claims and who do not file a timely request to opt-out of the class ("Subclass Two").

### Class Counsel and Class Representative

The Plaintiffs are represented by Lankenau & Miller LLP, 132 Nassau Street, Suite 423, New York, New York 10038, (212) 581-5005, The Gardner Firm, 1119 Government Street, Mobile, Alabama 36604, (251) 433-8100 and Margolis Edelstein, 750 S. Madison, Wilmington, Delaware 19801, (302) 777-4680. These firms have recently been appointed Class Counsel by the Court.

The Court has also recently appointed Plaintiffs as the Class Representatives.

### What to Do

If you wish to be a member of the Class, you do not need to do anything and you will automatically be a class member. This means you will be bound by any judgment (whether favorable or unfavorable) or court-approved settlement in the class. Before court approval, you, as a class member, will receive notice of any proposed settlement and will be afforded an opportunity to object to the settlement. As a class member, you are entitled to make an appearance in the case through your own counsel, if you so desire.

If you do not wish to participate in this action, and wish to be excluded from the class, you must return the enclosed form indicating your choice. By opting out of the class you will reserve your rights under the WARN Act and not share in any recovery in the Action. To exclude yourself from the Class, check the line in the opt-out form below, and sign and mail that form by certified mail, return receipt requested, to:

The Gardner Firm
1119 Government Street
Mobile, Alabama 36604
Attn: Mary E. Olsen.

The form must be received by Ms. Olsen by no later than _____, 2007. All requests for exclusion received after that date will not be effective, and any person who sends a late request will be a member of the Class in the Action and will be bound in the same way and to the same extent as all other class members.

3

The Court has taken no position regarding the merits of Plaintiffs' claims or Defendants' defenses. Please do not call or contact the Court for information.

If you wish information or assistance, please contact Mary Olsen of The Gardner Firm at (251) 433-8100.

RLF1-3199459-1

............................................................................

Richard D. Austin, Lauren V. Liva, Michael Vandall, Scott Rasmussen, Martha F. Moreland, and Carla Lyles v. New Century TRS Holdings, Inc., et al. – Opt-Out Form

I, the undersigned, have read the foregoing Notice of Class Action and understand its contents.

_____ I do **not** want to participate in the above Class Action and do not wish to be bound by the outcome of the Class Action or receive any benefits of that action.

_____          _____

Signature                                                          Address

_____          _____

Name (printed or typed)

_____          _____

Date                                                                 Telephone

# Exhibit 5

# Exhibit 5

**A.     Allocation of Settlement Fund.**

Initial distribution of the Settlement Fund shall be made in a lump sum of $2.6 million from the Liquidating Trust to Class Counsel and deposited into a trust account established by Class Counsel. The amount of the gross allowed claim allocated to each Eligible Class Member shall be derived from $2.584 million (i.e., the Settlement Fund of $2.6 million, less $16,000 paid in the aggregate as service fees to the Class Representatives) and shall be based on the following, as calculated by Class Counsel: (i) approximately 70% of each Eligible Class Member's Maximum Theoretical WARN Claim (defined below) where the Eligible Class Member was subject to the April RIF and formerly employed in California; (ii) approximately 35% of each Eligible Class Member's Maximum Theoretical WARN Claim where the Eligible Class Member was subject to the April RIF and formerly employed outside of California; (iii) approximately 15% of each Eligible Class Member's Maximum Theoretical WARN Claim where the Eligible Class Member was subject to the May RIF and formerly employed in California and (iv) approximately 10% of each Eligible Class Member's Maximum Theoretical WARN Claim where the Eligible Class Member was subject to the May RIF and formerly employed outside of California.

**B.     Explanation of Settlement Calculations and Allocation.**

In calculating the amount of the gross allowed claims described above, the daily rate of individual Eligible Class Members shall be determined by dividing the employee's bi-weekly base salary at the time of termination of employment by 10 (the "Daily Pay"). [1] Class Counsel shall then determine each Eligible Class Member's Maximum Theoretical WARN Claim by multiplying each Eligible Class Member's Daily Pay by 22. This calculation is based on the following assumptions: 1) that there were 45 working days within the alleged sixty day violation period and 2) that the 45 working days should be reduced by approximately 50% (to 22 days) to account for wage offsets paid by the Debtor-Defendants to employees. The Maximum Theoretical WARN Claim shall then be multiplied by the percentages set forth above and deemed appropriate given the Eligible Class Members' RIF date; the state in which he or she was formerly employed and applicable law.

---

[1] Bi-weekly payroll information at the time of termination was not available for five Eligible Class Members. Their daily rate shall be determined by taking their 2007 income from Defendants and dividing it by the number of work days with the period of January 1, 2007 through their date of termination.

# Exhibit 6a

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------X
```
In re:
NEW CENTURY TRS HOLDINGS, INC.,
*fka* NEW CENTURY FINANCIAL CORPORATION
a Delaware Corporation,

Case No. 07-10416-KJC

Chapter 11

                    Debtor.
```
-------------------------------------X
```
In re:
NEW CENTURY FINANCIAL CORPORATION
a Maryland Corporation,

Case No. 07-10417-KJC

Chapter 11

                    Debtor.
```
-------------------------------------X
```
In re:
NEW CENTURY MORTGAGE CORPORATION
a California Corporation,

Case No. 07-10419-KJC

Chapter 11

                    Debtor.
```
-------------------------------------X
```
In re:
HOME123 CORPORATION
a California Corporation,

Case No. 07-10421-KJC

Chapter 11

                    Debtor.
```
-------------------------------------X
```
RICHARD D. AUSTIN, LAUREN V. LIVA, MICHAEL
VANDALL, SCOTT RASMUSSEN, MARTHA F.
MORELAND and CARLA LYLES
on their own behalf and on behalf of all other persons
similarly situated,

Adv. Pro. No. 07-50970-KJC

                    Plaintiffs,

               - against -

NEW CENTURY TRS HOLDINGS, INC., NEW
CENTURY FINANCIAL CORPORATION, NEW
CENTURY MORTGAGE CORPORATION, and
HOME123 CORPORATION,
                    Defendants.
```
-------------------------------------X
```

1

**NOTICE TO CLASS OF (A) PROPOSED SETTLEMENT OF CLASS ACTION CONCERNING WARN ACT CLAIMS; (B) AWARD OF ATTORNEYS' FEES TO CLASS COUNSEL; (C) DATE OF COURT HEARING FOR FINAL APPROVAL OF PROPOSED SETTLEMENT AND AWARD OF ATTORNEYS' FEES AND EXPENSES, AND (D) RIGHT TO OBJECT TO THE SETTLEMENT AND CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND EXPENSES AND TO APPEAR AT COURT HEARING**

TO:    The former employees of defendants New Century TRS Holdings, Inc., New Century Financial Corporation, New Century Mortgage Corporation, and Home123 Corporation (collectively, the "Debtor-Defendants"), who were terminated without cause from their employment at the Debtor-Defendants' facilities, including without limitation the Debtor-Defendants' places of business in: Irvine, California, Melville, New York, Columbus, Ohio, and Houston, Texas (the "Facilities") during the period from April 2, 2007 or thereafter as part of or as the reasonably expected consequence of a mass layoff or plant closing at the Debtor-Defendants' Facilities.

## Introduction

1.      There is currently pending in the United States Bankruptcy Court for the District of Delaware the above captioned adversary proceeding (the "Class Litigation") brought under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 *et seq.*, and its California counterpart, California Labor Code §§ 1400 *et seq.* (collectively, the "WARN Act"). The Plaintiffs, listed above, and Travis Kelley and James Holzgang (collectively the "Class Representatives"), and the Debtor-Defendants have reached a proposed Stipulation to Settle the WARN Act Class Litigation (the "Settlement") under which benefits described below will be provided to the members of the Class.

2.      This Notice constitutes notice to the Class of (a) the proposed Settlement of the Class Litigation, (b) the request of Class Counsel for the award of attorneys' fees of one-third (1/3) the Class recovery, and (c) the date of the Court hearing for final approval of proposed settlement and award of attorneys' fees; (d) the right of each member of the Class to object to or comment on, the Settlement and Class Counsel's request for attorneys' fees and expenses and to appear at the hearing at which the Court will consider the final approval of the Settlement and Class Counsel's request for attorneys' fees and expenses.

## Description of the Class Litigation

3.      On April 17, 2007, Plaintiffs filed with the Bankruptcy Court a class-action complaint (the "Complaint")[1], commencing the Class Litigation against the Debtor-Defendants alleging that the Debtor-Defendants violated the WARN Act by ordering plant closings and/or mass layoffs on or about April 2, 2007 and thereafter, without providing sixty days of advance notice thereof, and that in consequence of this failure, the affected employees have an Administrative Priority claim pursuant to § 503(b)(1)(A) against the Debtor-Defendants consisting of their total wages and benefits for the sixty day violation period. The Class Litigation is captioned *Richard D. Austin, Lauren V. Liva, Michael Vandall, Scott Rasmussen, Martha F. Moreland and Carla Lyles, on their own behalf and on behalf of all other persons similarly situated, v. New Century TRS Holdings, Inc., New Century Financial Corporation, New Century Mortgage Corporation, and Home123 Corporation,* Adversary Proceeding No. 07-50970 (KJC). The WARN Act requires an employer having more than 100 full-time employees to give its employees working at facilities having at least 50 full-time employees at least 60

---

[1] Plaintiffs filed their first amended complaint on April 17, 2007, as well.

calendar days' advance written notice before ordering a shutdown. Employers may give less than 60 days written notice if it can prove that certain defenses, as enumerated in the WARN Act, were applicable. But to avail itself of these defenses, the employer must still give as much notice as practicable and include in the notice a brief statement of the basis for less than 60 days' notice. An employer who is found liable under the WARN Act can seek reduction of damages on the grounds that it believed in good faith that it was in compliance with the WARN Act and that it had reasonable grounds for the belief or that it paid wages and benefits during the violation period.

4.      On or about June 8, 2007, the Debtor-Defendants answered the Complaint in the Class Litigation in which the Debtor-Defendants denied the material allegations of the Complaint and asserted multiple affirmative defenses, including the "unforeseeable business circumstances", the "faltering company" and the "good faith" defenses. The Answer and other contentions of the Debtor-Defendants' raise the following issues, among others: (a) whether the Debtor-Defendants provided notice to the Plaintiffs or the other members of the Class; (b) whether any such notice, if provided, was adequate and in compliance with the pertinent regulations; (c) whether such notice was defective; (d) whether the Debtor-Defendants were entitled to give less than 60 days notice because of reasonably unforeseeable business circumstances; (e) whether the Debtor-Defendants were entitled to give less than 60 days notice because, at the time notice would have otherwise been required, it was seeking new capital or business that it reasonably believed, if obtained, would have obviated or substantially postponed the plant closing or mass layoff; (f) whether such search for new capital or business was commercially reasonable under the circumstances; (g) whether the Debtor-Defendants have other defenses to the application of the WARN Act; (h) whether the employment losses suffered by the aggrieved employees were caused by the Debtor-Defendants' failure to obtain capital or business; (i) whether the Debtor-Defendants gave "as much notice as is practicable;" (j) whether certain Facilities having fewer than 50 full-time employees suffered a plant closing or mass layoff as those terms are defined in the WARN Act; (k) whether the employer is entitled to a defense of "good faith;" (l) the computation of the amount of damages; (m) whether the Debtor-Defendants are entitled to set-offs against damages of sums paid post-petition to employees; (n) whether attorneys' fees are to be awarded to the Class Representatives and the Class if they prevail and (o) whether the damages are entitled to administrative priority under § 503(b)(1)(A) or wage or benefit priority under §§ 507(a)(4) or (5), respectively.

5.      On September 11, 2007, the Court granted class certification (the "Class Certification Order")[2]. The Class Certification Order, entered on September 12, 2007, provided for the following: (a) the creation of two distinct sub-classes encompassing (i) all former employees of Debtor-Defendants terminated without cause from their employment at Debtor-Defendants' facilities[3] during the period April 2, 2007 to May 1, 2007 in violation of the WARN Act, that did not validly release their claims and did not opt-out, and (ii) all former employees of Debtor-Defendants terminated without cause from their employment at Debtor-Defendants' facilities during the period of May 2, 2007 or thereafter in violation of the WARN Act, that did not validly release their claims and did not opt-out ((i) and (ii) collectively, the "Class"); (b) the

---

[2] A Revised Order Granting Class Certification was entered on October 19, 2007.

[3] In footnote no. 1 of the Class Certification Order, "Facilities" is defined as Defendants' "places of business where there was a loss of employment for at least 50 employees and at least 33% of the employees" of the Debtor-Defendants' places of business, excluding part-time employees.

3

appointment of Richard Austin, Lauren V. Liva, Michael Vandall, Scott Rasmussen, Martha F. Moreland, and Carla Lyles as class representatives for the first sub-class, with class representative(s) for subclass two to be named later by the Plaintiffs[4]; and (e) the designation of Margolis Edelstein, The Gardner Firm, P.C. and Lankenau & Miller, LLP as counsel to the Class (collectively, "Class Counsel").

6.    Class Counsel mailed the Initial Class Notice to Class Members whose names and addresses were supplied by counsel for the Debtor-Defendants on or about October 12, 2007. The Debtor-Defendants provided an initial list of Class Members (the "Initial Class Member List") pursuant to the Class Certification Order and a Confidentiality Stipulation between Class Representatives and the Debtor-Defendants (entered October 19, 2007). The Initial Class Member List was based on the best information available to the Debtor-Defendants at the time and was transmitted to Class Counsel in good faith. Mailing of the Initial Class Notice, including opt-out instructions, was completed on or about October 30, 2007.

7.    In response to the Initial Class Notice, five (5) individuals timely opted out of their sub-class (collectively, the "Initial Opt-Outs") and having opted-out of their determined sub-class, these individuals are not entitled to share in the Settlement Fund, as described below.

8.    In a continuing effort to verify the accuracy of the Class Member information being provided to Class Counsel, the Debtor-Defendants subsequently discovered that the Initial Class Member List inadvertently omitted certain persons within the definition of the two sub-classes and included persons falling outside of the two sub-classes. The Debtor-Defendants disclosed this information to Class Counsel and provided a supplemental list of Class Members (the "Supplemental Class Member List") in January 2008. As a consequence, certain Class Members did not receive the Initial Class Notice and have never been afforded an opportunity to opt out of the WARN Action (the "New Class Members"). Class Counsel and the Debtor-Defendants' Counsel continued to negotiate the precise classification of employees subject to either the April reduction in force or the May reduction in force.

9.    The parties have identified 1,528 persons who constitute, to the best of the Debtor-Defendants' knowledge, information and belief, all the individuals that are currently within the Class definition. Further, 86 employees ineligible for either sub-class were inadvertently listed on the Initial Class Member List (the "Ineligible Class Members"). The reasons for their ineligibility were based on one or more of the following: (a) his/her employment with the Debtor-Defendants being terminated for cause; (b) his/her voluntary resignation from employment with the Debtor-Defendants; (c) his/her execution of a release of claims against the Debtor-Defendants; (d) his/her employment at a location other than a qualifying WARN Facility; or (e) his/her employment with a New Century entity that is not a Debtor-Defendant.

10.    The individuals eligible to share in the Settlement Fund (as hereinafter defined) created under this Settlement (the "Eligible Class Members") are those Class Members, other than the Initial Opt-Outs, combined with the New Class Members, who do not opt-out.

---

[4] Following entry of the Class Certification Order, Plaintiffs proposed Travis Kelley and James Holzgang as class representatives for subclass two. Defendants did not object to these individuals and they became class representatives for subclass two.

4

11. Class Counsel has conducted extensive discovery, including the examination of voluminous documents of the Debtor-Defendants, the review of responses to interrogatories, and the interview of members of the Class. Class Counsel has analyzed the applicable law and weighed the likelihood of success.

### The Proposed Settlement

12. The following description of the proposed Settlement is only a summary. In the event of any difference between this summary and the terms of the Settlement, the terms of the Settlement shall control. You may secure a copy of the complete Settlement from Class Counsel Mary E. Olsen at the address shown below. The terms of the Settlement relevant to the Eligible Class Members may be summarized as follows:

### The Terms of the Settlement

13. The Settlement Fund shall consist of two million six hundred thousand dollars ($2,600,000.00) to be paid by the New Century Liquidating Trust, as successor to the Debtor-Defendants (the "Liquidating Trust", and its representative the "Liquidating Trustee"), within five (5) business days of the approval date of the Settlement to Class Counsel for distribution to Eligible Class Members.

14. The Settlement shall not become effective if the Court does not approve it or if more than 5% of the Eligible Class Members opt-out and the Liquidating Trustee exercises the option to withdraw from the Settlement.

15. The amount of the gross allowed claim allocated to each Eligible Class Member shall be derived from $2.584 million (i.e., the Settlement Fund of $2.6 million, less $16,000 paid in the aggregate as service fees to the Class Representatives) and shall be based on the following, as calculated by Class Counsel: (i) approximately 70% of each Eligible Class Member's Maximum Theoretical WARN Claim (defined below) where the Eligible Class Member was subject to the April RIF and formerly employed in California; (ii) approximately 35% of each Eligible Class Member's Maximum Theoretical WARN Claim where the Eligible Class Member was subject to the April RIF and formerly employed outside of California; (iii) approximately 15% of each Eligible Class Member's Maximum Theoretical WARN Claim where the Eligible Class Member was subject to the May RIF and formerly employed in California and (iv) approximately 10% of each Eligible Class Member's Maximum Theoretical WARN Claim where the Eligible Class Member was subject to the May RIF and formerly employed outside of California.

16. In calculating the amount of the gross allowed claims described above, the daily rate of individual Eligible Class Members shall be determined by dividing the employee's bi-weekly base salary at the time of termination of employment by 10 (the "Daily Pay"), [5] Class Counsel shall then determine each Eligible Class Member's Maximum Theoretical WARN Claim by multiplying each Eligible Class Member's Daily Pay by 22. This calculation is based

---

[5] Bi-weekly payroll information at the time of termination was not available for five Eligible Class Members. Their daily rate shall be determined by taking their 2007 income from Defendants and dividing it by the number of work days with the period of January 1, 2007 through their date of termination.

on the following assumptions: 1) that there were 45 working days within the alleged sixty day violation period and 2) that the 45 working days should be reduced by approximately 50% (to 22 days) to account for wage offsets paid by the Debtor-Defendants to employees. The Maximum Theoretical WARN Claim shall then be multiplied by the percentages set forth above and deemed appropriate given the Eligible Class Members' RIF date; the state in which he or she was formerly employed and applicable law .

17.     The Class Representatives in this matter (Richard Austin, Lauren V. Liva, Michael Vandall, Scott Rasmussen, Martha F. Moreland, Carla Lyles, Travis Kelley and James Holzgang) shall each receive a one-time payment of two thousand dollars ($2,000) for their service in this matter as Class Representatives (the "Service Payment"). Class Counsel shall distribute this payment to the above named individuals in addition to their individualized WARN settlement amounts. No deductions for attorney fees shall be made from these service payments.

18.     If settlement checks issued to Eligible Class Members remain uncashed as of the 241st day after the initial distribution (the "Residual Funds") such funds shall be disbursed to the Impact Fund, a non-profit organization dedicated to employee rights. No portion of the Residual Funds will revert to the Liquidating Trust for any reason, or be retained by Class Counsel.

19.     The total amount of your projected recovery under the Settlement is shown on Exhibit "A" annexed hereto.

## Class Counsel's Recommendation

20.     Class Counsel recommends the Settlement, believing that it is fair, reasonable and adequate to the Class.

## Taxes and Other Deductions Required by Law

21.     All Eligible Class Members who receive a disbursement pursuant to this Settlement will receive an IRS Form 1099 with their WARN Act Settlement payment. No taxes will be withheld, but since WARN damages are considered to be wages, we urge you to consult with a tax adviser to determine the exact amount of taxes due on your WARN Act Settlement, when you receive it.

## Class Counsel's Fees and Expenses

22.     Under the proposed Settlement and subject to final court approval, Class Counsel shall be paid attorneys' fees of thirty-three and one-third percent (33 1/3%) of the total amount due each Eligible Class Member.

23.     You may object to the request of Class Counsel for attorneys' fees by filing an objection within the time and in the manner specified below.

## Release of All Claims related to Your Termination and Effect of Approval of Settlement Agreement

24.     Upon final approval by the Court (and upon no objection by the Liquidating Trustee), the Settlement will result in the dismissal of the Class Litigation on the merits and with prejudice to all Eligible Class Members, and shall constitute a release by each Eligible Class Member of all claims for any alleged failure to provide adequate notice under the WARN Act and any claims arising out of the termination of their employment with the Debtor-Defendants, whether based on the WARN Act or any other federal, state or local law, regulation

6

or ordinance. Not included in Released Claims are (i) any obligation created by or arising out of this Settlement; (ii) any right to indemnification that the Eligible Class Members may have pursuant to any articles of incorporation, certificate of incorporation, bylaws or similar governing document of any Debtor-Defendant with respect to any loss, damages or expenses (including but not limited to attorneys' fees) that an Eligible Class Member may in the future incur with respect to his or her prior service as an employee, officer or director or in any other capacity with any Debtor-Defendant; (iii) any rights that an Eligible Class Member may have to insurance coverage for such losses, damages or expenses under any directors and officers liability insurance policy of any Debtor-Defendant; (iv) an Eligible Class Member's rights to continued medical coverage under COBRA; (v) any rights to payment of benefits that an Eligible Class Member may have under a qualified or nonqualified retirement plan sponsored or maintained by any Debtor-Defendant (including, without limitation, any 401(k), deferred compensation, and supplemental retirement benefits); and (vi) an Eligible Class Member's rights to benefits or coverage under any employee welfare benefit plan (as that term is defined in Section 3(1) of the Employee Retirement Income Security Act of 1974, as amended).

### How to Object

25. If you are satisfied with the proposed settlement including Class Counsel's requested fees and the calculation of your recovery as shown on Exhibit "A", you need to do nothing and you will receive your share of the settlement, net of attorneys' fees.

26. If, on the other hand, you believe that the proposed settlement is unfair or inadequate or you dispute any of the amounts shown on Exhibit "A" or the information concerning your employment or pay or your classification as an Ineligible Class Member, or that Class Counsel's request for attorneys' fees should not be approved, you may object to the Settlement and/or the request for attorneys' fees by mailing certified mail, return receipt requested a detailed written statement bearing the caption of this action shown above on the first page stating your comment or objection, to the Clerk of the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 5th Floor, Courtroom 5, Wilmington, Delaware 19801, and by sending copies of that statement, also by certified mail, return receipt requested, to 1) AMJ Advisors, 999 Central Avenue, Suite 208, Woodmere, New York 11598, Attention: Alan M. Jacobs, Esq.; 2) RICHARDS, LAYTON & FINGER, P.A., One Rodney Square, P.O. Box 551, Wilmington, Delaware 19899, Attention: Robert J. Stearn, Esq.; 3) O'MELVENY & MYERS, LLP, 275 Battery Street, Suite 2600, San Francisco, California 94111, Attention: Suzzanne S. Uhland, Esq.; 4) LANKENAU & MILLER LLP, 132 Nassau Street, Suite 423, New York, New York 10038, Attention: Stuart J. Miller, Esq.; 5) THE GARDNER LAW FIRM, P.C., 1119 Government Street, Post Office Drawer 3103, Mobile, Alabama 36652, Attention: Mary Olsen, Esq.; 6) HAHN & HESSEN LLP, 488 Madison Avenue, New York, New York 10022, Attention: Mark S. Indelicato, Esq.; and 7) BLANK ROME LLP, 1201 Market Street, Suite 800, Wilmington, Delaware 19801, Attention: Bonnie Glantz Fatell, Esq. **Objections must be postmarked no later than _____, 2008, and must include the caption of the action and your name, address, and telephone number together with a detailed statement of the basis for your objection and whether you wish to be heard personally or by counsel at the final hearing at which the parties will be requesting binding Court approval of the Settlement and the award of attorneys' fees as described above.**

27. You may also appear in person or by counsel at the final hearing described below.

### Final Hearing to Approve Settlement and Award Attorneys' Fees

28. The hearing for final consideration and approval of the Settlement and the award of attorney's fees to Class Counsel is scheduled to take place on _____, 2008, at _____ p.m. in Courtroom #5 of the United States Bankruptcy Court for the District of Delaware at 824 North Market Street, 5th Floor, Wilmington, Delaware 19801. That hearing may be adjourned without further notice. If you wish to determine if the hearing is adjourned, you may contact Ms. Olsen at the address shown above.

### Other Information

29. Any questions from members of the Class concerning this Notice or the Class Litigation should be directed to The Gardner Firm, P.C., 1119 Government Street, Post Office Drawer 3103, Mobile, AL 36652, Attn: Mary E. Olsen Esq. All requests for more information, including a copy of the Settlement, should be sent by first-class mail to Ms. Olsen to the address indicated above.

30. While the Court has approved the sending of this Notice, that does not indicate, and is not intended to indicate, that the Court has any opinion as to the respective claims or defenses asserted by the parties in the Class Litigation.

**Please do not write to or call the Court concerning this matter.**

# Exhibit 6b

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------X

In re:
NEW CENTURY TRS HOLDINGS, INC.,
*fka* NEW CENTURY FINANCIAL CORPORATION     Case No. 07-10416-KJC
a Delaware Corporation,

     Chapter 11

             Debtor.

-----------------------------------X

In re:
NEW CENTURY FINANCIAL CORPORATION     Case No. 07-10417-KJC
a Maryland Corporation,

     Chapter 11

             Debtor.

-----------------------------------X

In re:
NEW CENTURY MORTGAGE CORPORATION     Case No. 07-10419-KJC
a California Corporation,

     Chapter 11

             Debtor.

-----------------------------------X

In re:
HOME123 CORPORATION     Case No. 07-10421-KJC
a California Corporation,

     Chapter 11

             Debtor.

-----------------------------------X

RICHARD D. AUSTIN, LAUREN V. LIVA, MICHAEL
VANDALL, SCOTT RASMUSSEN, MARTHA F.     Adv. Pro. No. 07-50970-KJC
MORELAND and CARLA LYLES
on their own behalf and on behalf of all other persons
similarly situated,

          Plaintiffs,

        - against -

NEW CENTURY TRS HOLDINGS, INC., NEW
CENTURY FINANCIAL CORPORATION, NEW
CENTURY MORTGAGE CORPORATION, and
HOME123 CORPORATION,

          Defendants.

-----------------------------------X

1

**NOTICE TO CLASS OF (A) PROPOSED SETTLEMENT OF CLASS ACTION CONCERNING WARN ACT CLAIMS; (B) AWARD OF ATTORNEYS' FEES TO CLASS COUNSEL; (C) DATE OF COURT HEARING FOR FINAL APPROVAL OF PROPOSED SETTLEMENT AND AWARD OF ATTORNEYS' FEES AND EXPENSES; (D) RIGHT TO OBJECT TO THE SETTLEMENT AND CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND EXPENSES AND TO APPEAR AT COURT HEARING AND (E) RIGHT OF NEW CLASS MEMBERS TO OPT-OUT OF THE CLASS ACTION**

Objection Deadline: _____, 2008
Hearing on Fairness of Settlement and Award of Attorneys' Fees: _____, 2008 at _____ p.m., United States Bankruptcy Court, District of Delaware, 824 North Market Street, 5th Floor, Courtroom #5, Wilmington, DE 19801

TO: The former employees of defendants New Century TRS Holdings, Inc., New Century Financial Corporation, New Century Mortgage Corporation, and Home123 Corporation (collectively, the "Debtor-Defendants"), who were terminated without cause from their employment at the Debtor-Defendants' facilities, including without limitation the Debtor-Defendants' places of business in: Irvine, California, Melville, New York, Columbus, Ohio, and Houston, Texas (the "Facilities") during the period from April 2, 2007 or thereafter as part of or as the reasonably expected consequence of a mass layoff or plant closing at the Debtor-Defendants' Facilities and who have been identified as New Class Members in this matter and have not previously been afforded an opportunity to opt-out of the Class.

**Introduction**

1. There is currently pending in the United States Bankruptcy Court for the District of Delaware the above captioned adversary proceeding (the "Class Litigation") brought under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 *et seq.*, and its California counterpart, California Labor Code §§ 1400 *et seq.* (collectively, the "WARN Act"). The Plaintiffs, listed above, and Travis Kelley and James Holzgang (collectively, the "Class Representatives"), and the Debtor-Defendants have reached a proposed Stipulation to Settle the WARN Act Class Litigation (the "Settlement") under which benefits described below will be provided to the members of the Class.

2. This Notice constitutes notice to the Class of (a) the proposed Settlement of the Class Litigation; (b) the request of Class Counsel for the award of attorneys' fees of one-third (1/3) the Class recovery; (c) date of court hearing for final approval of proposed settlement and award of attorneys' fees and expenses; (d) the right of each member of the Class to object to or comment on, the Settlement and Class Counsel's request for attorneys' fees and expenses and to appear at the hearing at which the Court will consider the final approval of the Settlement and Class Counsel's request for attorneys' fees and expenses; and (e) the right of New Class Members to opt-out of the Class Action.

**Description of the Class Litigation**

3. On April 17, 2007, Plaintiffs filed with the Bankruptcy Court a class-action complaint (the "Complaint")[1], commencing the Class Litigation against the Debtor-Defendants alleging that the Debtor-Defendants violated the WARN Act by ordering plant closings and/or mass layoffs on or about April 2, 2007 and thereafter, without providing sixty days of advance notice thereof, and that in consequence of this failure, the affected employees have an Administrative Priority claim pursuant to § 503(b)(1)(A) against the Debtor-Defendants

---

[1] Plaintiffs filed their first amended complaint on April 17, 2007, as well.

consisting of their total wages and benefits for the sixty day violation period. The Class Litigation is captioned *Richard D. Austin, Lauren V. Liva, Michael Vandall, Scott Rasmussen, Martha F. Moreland and Carla Lyles, on their own behalf and on behalf of all other persons similarly situated, v. New Century TRS Holdings, Inc., New Century Financial Corporation, New Century Mortgage Corporation, and Home123 Corporation*, Adversary Proceeding No. 07-50970 (KJC). The WARN Act requires an employer having more than 100 full-time employees to give its employees working at facilities having at least 50 full-time employees at least 60 calendar days' advance written notice before ordering a shutdown. Employers may give less than 60 days written notice if it can prove that certain defenses, as enumerated in the WARN Act, were applicable. But to avail itself of these defenses, the employer must still give as much notice as practicable and include in the notice a brief statement of the basis for less than 60 days' notice. An employer who is found liable under the WARN Act can seek reduction of damages on the grounds that it believed in good faith that it was in compliance with the WARN Act and that it had reasonable grounds for that belief or that it paid wages and benefits during the violation period.

4.      On or about June 8, 2007, the Debtor-Defendants answered the Complaint in the Class Litigation in which the Debtor-Defendants denied the material allegations of the Complaint and asserted multiple affirmative defenses, including the "unforeseeable business circumstances", the "faltering company" and the "good faith" defenses. The Answer and other contentions of the Debtor-Defendants' raise the following issues, among others: (a) whether the Debtor-Defendants provided notice to the Plaintiffs or the other members of the Class; (b) whether any such notice, if provided, was adequate and in compliance with the pertinent regulations; (c) whether such notice was defective; (d) whether the Debtor-Defendants were entitled to give less than 60 days notice because of reasonably unforeseeable business circumstances; (e) whether the Debtor-Defendants were entitled to give less than 60 days notice because, at the time notice would have otherwise been required, it was seeking new capital or business that it reasonably believed, if obtained, would have obviated or substantially postponed the plant closing or mass layoff; (f) whether such search for new capital or business was commercially reasonable under the circumstances; (g) whether the Debtor-Defendants have other defenses to the application of the WARN Act; (h) whether the employment losses suffered by the aggrieved employees were caused by the Debtor-Defendants' failure to obtain capital or business; (i) whether the Debtor-Defendants gave "as much notice as is practicable;" (j) whether certain Facilities having fewer than 50 full-time employees suffered a plant closing or mass layoff as those terms are defined in the WARN Act; (k) whether the employer is entitled to a defense of "good faith;" (l) the computation of the amount of damages; (m) whether the Debtor-Defendants are entitled to set-offs against damages of sums paid post-petition to employees; (n) whether attorneys' fees are to be awarded to the Class Representatives and the Class if they prevail and (o) whether the damages are entitled to administrative priority under §503(b)(1)(A) or wage or benefit priority under §§507(a)(4) or (5), respectively.

5.      On September 11, 2007, the Court granted class certification (the "Class Certification Order")[2]. The Class Certification Order, entered on September 12, 2007, provided for the following: (a) the creation of two distinct sub-classes encompassing (i) all former employees of Debtor-Defendants terminated without cause from their employment at Debtor-Defendants' facilities[3] during the period April 2, 2007 to May 1, 2007 in violation of the WARN

[2] A Revised Order Granting Class Certification was entered on October 19, 2007.

[3] In footnote no. 1 of the Class Certification Order, "Facilities" is defined as Defendants' "places of business where there was a loss of employment for at least 50 employees and at least 33%

Act, that did not validly release their claims and did not opt-out, and (ii) all former employees of Debtor-Defendants terminated without cause from their employment at Debtor-Defendants' facilities during the period of May 2, 2007 or thereafter in violation of the WARN Act, that did not validly release their claims and did not opt-out ((i) and (ii) collectively, the "Class"); (b) the appointment of Richard Austin, Lauren V. Liva, Michael Vandall, Scott Rasmussen, Martha F. Moreland, and Carla Lyles as class representatives for the first sub-class, with class representative(s) for subclass two to be named later by the Plaintiffs[4]; and (c) the designation of Margolis Edelstein, The Gardner Firm, P.C. and Lankenau & Miller, LLP as counsel to the Class (collective, "Class Counsel").

6. Class Counsel mailed the Initial Class Notice to Class Members whose names and addresses were supplied by counsel for the Debtor-Defendants on or about October 12, 2007. The Debtor-Defendants provided an initial list of Class Members (the "Initial Class Member List") pursuant to the Class Certification Order and a Confidentiality Stipulation between Class Representatives and the Debtor-Defendants (entered October 19, 2007). The Initial Class Member List was based on the best information available to the Debtor-Defendants at the time and was transmitted to Class Counsel in good faith. Mailing of the Initial Class Notice, including opt-out instructions, was completed on or about October 30, 2007.

7. In response to the Initial Class Notice, five (5) individuals timely opted out of their sub-class (collectively, the "Initial Opt-Outs") and having opted-out of their determined sub-class, these individuals are not entitled to share in the Settlement Fund, as described below.

8. In a continuing effort to verify the accuracy of the Class Member information being provided to Class Counsel, the Debtor-Defendants subsequently discovered that the Initial Class Member List inadvertently omitted certain persons within the definition of the two sub-classes and included persons falling outside of the two sub-classes. The Debtor-Defendants disclosed this information to Class Counsel and provided a supplemental list of Class Members (the "Supplemental Class Member List") in January 2008. As a consequence, certain Class Members did not receive the Initial Class Notice and have never been afforded an opportunity to opt out of the WARN Action (the "New Class Members"). YOU HAVE BEEN IDENTIFIED AS A NEW CLASS MEMBER AND ARE HEREBY OFFERED AN OPPORTUNITY TO OPT-OUT OF THIS CLASS IF YOU DO NOT CHOOSE TO BE BOUND BY THE TERMS OF THE SETTLEMENT DESCRIBED HEREIN.

9. The parties have identified 1,528 persons who constitute, to the best of the Debtor-Defendants' knowledge, information and belief, all the individuals that are currently within the Class definition. Further, 86 employees ineligible for either sub-class were inadvertently listed on the Initial Class Member List (the "Ineligible Class Members"). The reasons for their ineligibility were based on one or more of the following: (a) his/her employment with the Debtor-Defendants being terminated for cause; (b) his/her voluntary resignation from employment with the Debtor-Defendants; (c) his/her execution of a release of

---

of the employees" of the Debtor-Defendants' places of business, excluding part-time employees.

[4] Following entry of the Class Certification Order, Plaintiffs proposed Travis Kelley and James Holzgang as class representatives for subclass two. Defendants did not object to these individuals and they became class representatives for subclass two.

4

1  claims against the Debtor-Defendants; (d) his/her employment at a location other than a
2  qualifying WARN Facility; or (e) his/her employment with a New Century entity that is not a
   Debtor-Defendant.

3          10.    The individuals eligible to share in the Settlement Fund (as hereinafter
4  defined) created under this Settlement (the "Eligible Class Members") are those Class Members,
   other than the Initial Opt-Outs, combined with the New Class Members, who do not opt-out.
5
6          11.    Class Counsel has conducted extensive discovery, including the
   examination of voluminous documents of the Debtor-Defendants, the review of responses to
7  interrogatories, and the interview of members of the Class. Class Counsel has analyzed the
   applicable law and weighed the likelihood of success.
8
                            **The Proposed Settlement**
9
10         12.    The following description of the proposed Settlement is only a summary.
   In the event of any difference between this summary and the terms of the Settlement, the terms
   of the Settlement shall control. You may secure a copy of the complete Settlement from Class
11  Counsel Mary E. Olsen at the address shown below. The terms of the Settlement relevant to the
   Eligible Class Members may be summarized as follows:
12
                            **The Terms of the Settlement**
13
14         13.    The Settlement Fund shall consist of two million six hundred thousand
   dollars ($2,600,000.00) to be paid by the New Century Liquidating Trust, as successor to the
   Debtor-Defendants (the "Liquidating Trust", and its representative the "Liquidating Trustee"),
15  within five (5) business days of the approval date of the Settlement to Class Counsel for
   distribution to Eligible Class Members.
16
17         14.    The Settlement shall not become effective if the Court does not approve it
   or if more than 5% of the Eligible Class Members opt-out and the Liquidating Trustee exercises
18  the option to withdraw from the Settlement.

19         15.    The amount of the gross allowed claim allocated to each Eligible Class
   Member shall be derived from $2.584 million (i.e., the Settlement Fund of $2.6 million, less
20  $16,000 paid in the aggregate as service fees to the Class Representatives) and shall be based on
   the following, as calculated by Class Counsel: (i) approximately 70% of each Eligible Class
21  Member's Maximum Theoretical WARN Claim (defined below) where the Eligible Class
   Member was subject to the April RIF and formerly employed in California; (ii) approximately
22  35% of each Eligible Class Member's Maximum Theoretical WARN Claim where the Eligible
   Class Member was subject to the April RIF and formerly employed outside of California; (iii)
23  approximately 15% of each Eligible Class Member's Maximum Theoretical WARN Claim
24  where the Eligible Class Member was subject to the May RIF and formerly employed in
   California and (iv) approximately 10% of each Eligible Class Member's Maximum Theoretical
25  WARN Claim where the Eligible Class Member was subject to the May RIF and formerly
26  employed outside of California.

27         16.    In calculating the amount of the gross allowed claims described above, the
   daily rate of individual Eligible Class Members shall be determined by dividing the employee's
28

5

bi-weekly base salary at the time of termination of employment by 10 (the "Daily Pay").[5] Class Counsel shall then determine each Eligible Class Member's Maximum Theoretical WARN Claim by multiplying each Eligible Class Member's Daily Pay by 22. This calculation is based on the following assumptions: 1) that there were 45 working days within the alleged sixty day violation period and 2) that the 45 working days should be reduced by approximately 50% (to 22 days) to account for wage offsets paid by Defendants to employees. The Maximum Theoretical WARN Claim shall then be multiplied by the percentages set forth above and deemed appropriate given the Eligible Class Members' RIF date; the state in which he or she was formerly employed and applicable law .

17. The Class Representatives in this matter (Richard Austin, Lauren V. Liva, Michael Vandall, Scott Rasmussen, Martha F. Moreland, Carla Lyles, Travis Kelley and James Holzgang) shall each receive a one-time payment of two thousand dollars ($2,000) for their service in this matter as Class Representatives (the "Service Payment"). Class Counsel shall distribute this payment to the above named individuals in addition to their individualized WARN settlement amounts. No deductions for attorney fees shall be made from these service payments.

18. If settlement checks issued to Eligible Class Members remain uncashed as of the 241st day after the initial distribution (the "Residual Funds") such funds shall be disbursed to the Impact Fund, a non-profit organization dedicated to employee rights. No portion of the Residual Funds will revert to the Liquidating Trust for any reason, or be retained by Class Counsel. _____

19. The total amount of your projected recovery under the Settlement is shown on Exhibit "A" annexed hereto.

### Class Counsel's Recommendation

20. Class Counsel recommends the Settlement, believing that it is fair, reasonable and adequate to the Class.

### No Taxes Will be Withheld from Any Disbursement Under this Settlement

21. All Eligible Class Members who receive a disbursement pursuant to this Settlement will receive an IRS Form 1099 with their WARN Act Settlement payment. No taxes will be withheld, but since WARN damages are considered to be wages, we urge you to consult with a tax adviser to determine the exact amount of taxes due on your WARN Act Settlement, when you receive it.

### Class Counsel's Fees and Expenses

22. Under the proposed Settlement and subject to final court approval, Class Counsel shall be paid attorneys' fees of thirty-three and one-third percent (33 1/3%) of the total amount due each Eligible Class Member.

23. You may object to the request of Class Counsel for attorneys' fees by

---

[5] Bi-weekly payroll information at the time of termination was not available for five Eligible Class Members. Their daily rate shall be determined by taking their 2007 income from Defendants and dividing it by the number of work days with the period of January 1, 2007 through their date of termination.

6

1   filing an objection within the time and in the manner specified below.

2   **Release of All Claims related to Your Termination and
    Effect of Approval of Settlement Agreement**

3

4   24.     Upon final approval by the Court (and upon no objection by the
    Liquidating Trustee), the Settlement will result in the dismissal of the Class Litigation on the
    merits and with prejudice to all Eligible Class Members, and shall constitute a release by each

5   Eligible Class Member of all claims for any alleged failure to provide adequate notice under the
    WARN Act and any claims arising out of the termination of their employment with the Debtor-

6   Defendants, whether based on the WARN Act or any other federal, state or local law, regulation
    or ordinance. Not included in Released Claims are (i) any obligation created by or arising out of

7   this Settlement; (ii) any right to indemnification that the Eligible Class Members may have
    pursuant to any articles of incorporation, certificate of incorporation, bylaws or similar governing

8   document of any Debtor-Defendant with respect to any loss, damages or expenses (including but
    not limited to attorneys' fees) that an Eligible Class Member may in the future incur with respect

9   to his or her prior service as an employee, officer or director or in any other capacity with any
    Debtor-Defendant; (iii) any rights that an Eligible Class Member may have to insurance

10  coverage for such losses, damages or expenses under any directors and officers liability
    insurance policy of any Debtor-Defendant; (iv) an Eligible Class Member's rights to continued

11  medical coverage under COBRA; (v) any rights to payment of benefits that an Eligible Class
    Member may have under a qualified or nonqualified retirement plan sponsored or maintained by

12  any Debtor-Defendant (including, without limitation, any 401(k), deferred compensation, and
    supplemental retirement benefits); and (vi) an Eligible Class Member's rights to benefits or

13  coverage under any employee welfare benefit plan (as that term is defined in Section 3(1) of the
    Employee Retirement Income Security Act of 1974, as amended).

14

15  **How to Object or Opt-out**

16  25.     If you are satisfied with the proposed settlement including Class Counsel's
    requested fees and the calculation of your recovery as shown on Exhibit "A", you need to do

17  nothing and you will receive your share of the settlement, net of attorneys' fees.

18

19

20

21

22

23

24

25

26

27

28

26. If, on the other hand, you believe that the proposed settlement is unfair or inadequate or you dispute any of the amounts shown on Exhibit "A" or the information concerning your employment or pay or your classification as an Ineligible Class Member, or that Class Counsel's request for attorneys' fees should not be approved, you may object to the Settlement and/or the request for attorneys' fees by mailing certified mail, return receipt requested a detailed written statement bearing the caption of this action shown above on the first page stating your comment or objection, to the Clerk of the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 5th Floor, Courtroom 5, Wilmington, Delaware 19801, and by sending copies of that statement, also by certified mail, return receipt requested, to 1) AMJ Advisors, 999 Central Avenue, Suite 208, Woodmere, New York 11598, Attention: Alan M. Jacobs, Esq.; 2) RICHARDS, LAYTON & FINGER, P.A., One Rodney Square, P.O. Box 551, Wilmington, Delaware 19899, Attention: Robert J. Stearn, Esq.; 3) O'MELVENY & MYERS, LLP, 275 Battery Street, Suite 2600, San Francisco, California 94111, Attention: Suzzanne S. Uhland, Esq.; 4) LANKENAU & MILLER LLP, 132 Nassau Street, Suite 423, New York, New York 10038, Attention: Stuart J. Miller, Esq.; 5) THE GARDNER LAW FIRM, P.C., 1119 Government Street, Post Office Drawer 3103, Mobile, Alabama 36652, Attention: Mary Olsen, Esq.; 6) HAHN & HESSEN LLP, 488 Madison Avenue, New York, New York 10022, Attention: Mark S. Indelicato, Esq.; and 7) BLANK ROME LLP, 1201 Market Street, Suite 800, Wilmington, Delaware 19801, Attention: Bonnie Glantz Fatell, Esq. **Objections must be postmarked no later than _____, 2008, and must include the caption of the action and your name, address, and telephone together with a detailed statement of the basis for your objection and whether you wish to be heard personally or by counsel at the final hearing at which the parties will be requesting binding Court approval of the Settlement and the award of attorneys' fees as described above.**

27. You may also appear in person or by counsel at the final hearing described below.

28. If you choose not to be bound by this Settlement and do not wish to share in any of the benefits described herein, you may opt-out of the Class by filling out the attached "Opt-Out Form", **and sign and mail that form by certified mail, return receipt requested, to: The Gardner Firm, P.C., 1119 Government Street, P.O. Drawer 3103, Mobile, Alabama 36652, Attn: Mary E. Olsen. The form must be received by Ms. Olsen by no later than _____, 2008. All requests for exclusion received after that date will not be effective, and any person who sends a late request will be a member of the Class.**

### Final Hearing to Approve Settlement and Award Attorneys' Fees

29. The hearing for final consideration and approval of the Settlement and the award of attorney's fees to Class Counsel is scheduled to take place on _____, 2008, at _____ p.m. in Courtroom #5 of the United States Bankruptcy Court for the District of Delaware at 824 North Market Street, 5th Floor, Wilmington, Delaware 19801. That hearing may be adjourned without further notice. If you wish to determine if the hearing is adjourned, you may contact Ms. Olsen at the address shown above.

### Other Information

30. Any questions from members of the Class concerning this Notice or the Class Litigation should be directed to The Gardner Firm, P.C., 1119 Government Street, Post Office Drawer 3103, Mobile, Alabama 36652, Attn: Mary E. Olsen Esq. All requests for more

1   information, including a copy of the Settlement, should be sent by first-class mail to Ms. Olsen
2   to the address indicated above.

3           31.     While the Court has approved the sending of this Notice, that does not
    indicate, and is not intended to indicate, that the Court has any opinion as to the respective
4   claims or defenses asserted by the parties in the Class Litigation.

5   **Please do not write to or call the Court concerning this matter.**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                            9

1

2 <u>OPT-OUT FORM</u>

3

4 <u>Richard D. Austin, Lauren V. Liva, Michael Vandall, Scott Rasmussen, Martha F. Moreland, and</u>

5 <u>Carla Lyles v. New Century TRS Holdings, Inc., et al.</u>

6 I, the undersigned, have read the foregoing Class Notice and understand its contents.

7 I do not want to participate in the above Class Action and do not wish to receive any benefits
from or be bound by the Settlement described herein.
8

9 _____        _____
Signature                                   Address
10

11 _____        _____
Name (printed or typed)
12

13 _____        _____
Date                                        Telephone

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10

# Exhibit 7

# OPT-OUT FORM

Richard D. Austin, Lauren V. Liva, Michael Vandall, Scott Rasmussen, Martha F. Moreland, and Carla Lyles v. New Century TRS Holdings, Inc., et al.

I, the undersigned, have read the foregoing Class Notice and understand its contents.

I do not want to participate in the above Class Action and do not wish to receive any benefits from or be bound by the Settlement described herein.

_____     _____
Signature                           Address

_____     _____
Name (printed or typed)

_____     _____
Date                                Telephone

1